## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MCKEON,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF ASBURY PARK, MAYOR JOHN MOOR, AND MICHAEL CAPABIANCO,<br><br>                    Defendants. | Civil Action No. 3:19-cv-08536-MAS-ZNQ<br>Judge Michael A. Shipp<br><br>Filed Electronically via ECF<br><br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO ENFORCE<br>SETTLEMENT AGREEMENT** |

This Matter, having been brought before the Court on Motion of Florio Perrucci Steinhardt

Cappelli Tipton & Taylor, LLC, attorneys for Defendants, City of Asbury Park, Mayor John Moor

and Michael Capabiano, for the entry of an Order Enforcing Settlement Agreement; and the Court

having considered the argument of counsel and exhibits filed in support of Defendants' Motion,

and for other good cause shown:

**IT IS** on this _____ day of _____, 2020,

**ORDERED** that the Defendants' Motion to Enforce Settlement Agreement is hereby

**GRANTED**; and

**IT IS FURTHER ORDERED** that the parties are to execute the attached Settlement

Agreement and Release within five (5) days of the date of this Order.


_____
Honorable Michael A. Shipp, U.S.D.J.

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of March 2020, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself, and on the other hand, Robert M. McKeon (hereinafter referred to as "Plaintiff" or "McKeon"). The City, NJIIF, and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

### WITNESSETH

**WHEREAS,** Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, which was removed on March 14, 2019 to the United States District Court of New Jersey, civil action No. 3:19-cv-8536 alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

{00824926.DOCX v.2}

1.    **Release and Discharge.** As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, hold harmless and discharges (the "Release") each of the City, Moor, Capabianco, and the NJIIF, as well as the City's and the NJIIF's past and present officials, agents, attorneys, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities  of any form or kind whatsoever whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time   through the date of this Agreement, including  without limitation, any Paclaims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act"); the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.;

the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA");   New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims.").

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed  Letter of Resignation effective June 30, 2020 (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that relate in any way to Claims asserted in the Civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been

duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action.  Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

        2.        **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims released by this Agreement, and McKeon's legal fees and costs  including but not limited to those associated  with the Civil Action.  Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement, and in Paragraph 3 below.  Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF, and shall be made payable to "Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

        Patricia Barasch, Esquire, Esq.
        Schall & Barasch
        110 Marter Avenue, Suite 105
        Moorestown, NJ 08057

In addition to payment of the Settlement Sum, the City shall (i) continue McKeon on the City's payroll at his current salary, subject to all tax, social security, pension, unemployment and benefits withholdings, with full medical benefits and payroll deductions until June 30, 2020, including payment, following Plaintiff's effective resignation  date, for all accrued vacation and sick time due him from his employment from July 28th, 2014 through June 30th, 2020; (ii) provide Plaintiff  with full medical benefits through his 65th birthday which is December 22nd,

2024; (iii) dismiss all pending disciplinary charges against McKeon's  and remove the April 2018 Management Review Plan, from Plaintiff's personnel file.  Plaintiff acknowledges and agrees that he shall not be entitled to any salary increases from the date of this Agreement through June 30, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties to the extent such claims arise from acts or omissions of McKeon within the scope of his active employment with the City, such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

4.      **Warranty of Capacity To Execute Agreement**.   Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified,   Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

5.      **Entire Agreement**. This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement.  The Agreement shall also inure to the benefit of each Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

6.      **Representation of Comprehension of Document**.  In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

7.      **No Admission of Liability**.  Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

8.      **Tax Implication**. NJIIF makes no representations as to the tax consequences or

liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf. Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum. Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

9.      **Non-Disparagement**. McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City or any employee or elected official thereof, and the ,The City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon.

10.      **Liens**. Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff. If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full. This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens. Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum. In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

10.      Indemnification. In the event Plaintif shall recover any monies from any person

who thereafter seeks indemnification from any of the Releasees with regard to any Claims embodied in this Settlement agreement and Release, Plaintiff shall indemnify and hold the Releasees harmless for any money spent in defending against these claims, including, but not limited to, attorneys' fees, costs of suit, judgment or settlement.

11.     **Related Claims.**  Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release,

12.     **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.     **Law**. This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

14.     **Severability**.  The provisions of this Agreement are severable.  If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

15.     **Counterparts**.  This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

16.     **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.

By:     _____
        ROBERT M. MCKEON

_____
Witness
        DATED:


By:     _____
        Schall & Barasch

_____
Witness
        DATED:

        The City of Asbury Park

By:    _____

City Manager, City of Asbury Park

_____
Witness

DATED:

The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park

By:    _____

ERIC J. NEMETH, ESQ.
GENERAL COUNSEL, NJIIF

_____
Witness

DATED: