UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MCKEON,<br><br>                        Plaintiff,<br><br>v.<br><br>CITY OF ASBURY PARK, MAYOR JOHN MOOR, AND MICHAEL CAPABIANCO,<br><br>                        Defendants. | Civil Action No. 3:19-cv-08536-MAS-ZNQ<br>Judge Michael A. Shipp<br><br>Filed Electronically via ECF<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

**AND NOW** come Defendants, City of Asbury Park, Mayor John Moor, and Michael Capabianco (collectively "Defendants"), by and through their attorneys, Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, hereby file the within Memorandum of Law in support of Plaintiffs' Petition to Enforce Settlement Agreement.

## FACTUAL BACKGROUND

Plaintiff, Robert McKeon, ("Plaintiff") filed a three count civil action complaint in the New Jersey Superior Court, Monmouth County, Docket MON-L-0537-19 against the City of Asbury Park ("City"), Mayor John Moor ("Mayor") and Michael Capabianco ("City Manager"), (collectively "Defendants") alleging violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA"); unlawful reprisal in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(d) (LAD), violation of the Family and Medical Leave Act, 29 U.S.C. 2601 et seq. ("FMLA"), ("Complaint") Defendants removed the Complaint to the United States District Court of New Jersey on March 14, 2019 [1].

The City is governed by the Faulkner Act, also known as the Optional Municipal Charter Law, under the Council-Manager form of government with the City Manager serving as the chief executive and administrative official of the City.

The City hired Plaintiff who is a licensed attorney in the State of New Jersey in July of 2014 as the Director of Property Improvement and Neighborhood Preservation, which included oversight of a number of code enforcement and housing inspectors. Plaintiff was not a licensed inspector until approximately 2016 and had no prior experience in code inspection. Plaintiff alleged that beginning in 2017 he believed certain City housing inspectors were not carrying out inspections and that he attempted to correct the housing inspectors' deficiencies. Plaintiff alleged the City Manager and Mayor intentionally frustrated his efforts by covering up employees' conduct and discontinuing certain programs in his department. Plaintiff claims that when he objected, the Defendants began to take retaliatory actions against him to force him out of his job.

Plaintiff is still receiving his salary and benefits per the terms of the settlement Term Sheet.

On June 6, 2018, Plaintiff was served with a Notice of Discipline by the City seeking a ninety (90) day suspension for failure to report to motor vehicle incidents or to report them to his supervisor. Plaintiff then requested time off to deal with "extreme stress and anxiety" which he alleges was caused by the Defendants. He applied for and was granted FMLA leave on June 18, 2018. Plaintiff alleged he received ten (10) weeks of counselling and treatment from his primary care physician and psychologist and that both doctors cleared him to return to work on August 30, 2018.

In response to Plaintiff's request to return to work, the City requested Plaintiff undergo an independent psychological examination pursuant to his union contract from a treating physician which would be paid for by the City. Plaintiff refused to undergo said examination.

Plaintiff filed an internal complaint of retaliation, harassment, discrimination and hostile work environment on August 24, 2018 upon the City. The New Jersey Intergovernmental Insurance Fund ("NJIIF"), the insurer of Defendants, retained the law firm of Florio Kenney Raval, LLP ("FKR Report") to conduct an independent investigation into the discrimination, harassment and retaliation claims of Plaintiff, specifically, Plaintiff's Notice of Claim letter dated August 24, 2018 whereby he alleged he was forced to endure a hostile work environment because he was intimidated, bullied and subjected to aggressive behavior by various staff members and that the City Manager and the Mayor were complicit in the conduct.

The Florio Kenney Raval, LLP sixty-seven (67) page report ("Florio Report") concluded, "with respect to McKeon's several allegations, none are substantiated. Therefore, the City need not take further action with respect to McKeon's complaints. The City should consider investigating whether McKeon violated the NJLAD or applicable City policies. We make this recommendation based upon our interviews during this investigation, which revealed the female code enforcement employees may have been treated differently than the male code enforcement employees." Investigative Report at 67.

Plaintiff submitted another letter dated September 25, 2018 again alleging that certain employees within his department and the City Manager committed violations of the City code, state law and internal and departmental policies and procedures. Plaintiff claimed to have reported the alleged conduct to the City Manager and alleged the City Manager retaliated by seeking a ninety (90) days suspension, which Plaintiff asserted was excessive.

On November 13, 2018, Plaintiff was served with a Preliminary Notice of Disciplinary Action ("PNDA") consisting of nine (9) charges alleging various acts of misconduct dated March 10, 2018. Administrative hearings were held on April 2, 3 and 9, 2019 before Hearing Officer Alan Genitempo, Esquire. The hearing officer findings and recommendations were issued by a written report dated August 20, 2019. ("F&R Report")

## SETTLEMENT

A settlement conference was held before Magistrate Judge Zahid N. Quraishi on August 22, 2019 [11]. The matter was settled, and the parties executed a hand-written settlement term sheet ("Term Sheet") (**Exhibit A**) The Term Sheet states as follows:

On this 28th day of August 2019, the parties hereby agree as follows:

- McKeon to release all claims against defendants
- McKeon to be continued on the payroll with full pay and benefits including pension withholdings & all deductions
- Full medical benefits for McKeon from 7/1/20 through McKeon's 65th birthday
- Payment of attorney's fees to Schall & Barasch in the amount of $65,000
- Payment of $70,000 to McKeon
- Mutual non-disparagement clause and indemnification of any claims assert against McKeon within scope of employment
- Removal of all pending disciplinary charges from McKeon's personnel file
- Removal of Management Review Plan
- Letter of Resignation effective 6/30/20 to be held in escrow
- McKeon to withdraw all complaints against Capabianco
- McKeon withdrawal of complaints against Melody Hartgrove [City clerk responsible for OPRA responses]
- No additional OPRA requests or issues related to civil litigation by McKeon
- Withdrawal of pending OPRA requests related to civil litigation
- Plaintiff to remove furniture by 9/30/19 [completed]
- Draft settlement agreement to be provided to plaintiff's counsel by October 3, 2019
- Payment of Settlement money after 30 days of execution of agreement

4

The Term Sheet was executed by:

- Plaintiff, Robert McKeon [who is a licensed attorney in the State of New Jersey]
- Patricia Barasch, Esquire, attorney for Plaintiff
- Michael Capabianco, City Manager [former-resigned subsequent to execution
- Eric Nemeth, Esquire, General Counsel for the NJIIF, insurer of City

Following approval of the settlement terms by the NJIIF council, a proposed Settlement Agreement and Mutual General Release (D-SAMGR #1) was forwarded to Plaintiff's counsel on October 4, 2019. **(Exhibit B)**. On October 24, 2019 defense counsel received a red lined version of the SAMGR from Plaintiff's counsel ("P-SAMGR#2) adding such things as reservation of rights to bring legal malpractice claims complaints against any attorney's representation of Plaintiff [as a City employee] in an unrelated Palubinskas lawsuit and ethics complaints against any attorneys in this matter or other matters. In other words, Plaintiff added in language preserving his right to sue and/or bring ethic charges against the insurer, NJIIF's general counsel, Eric Nemeth. This is clearly without basis and demonstrates Plaintiff's continued bad faith. This matter is settled. That includes a full release of the Defendants, NJIIF and their attorneys, officers etc… as is standard release language. Plaintiff also altered the OPRA provision of the release limiting it to only "identical OPRA requests being withdrawn." Again, clear sign Plaintiff has no intention of settling this matter and is attempting to carve out language to continue it after he receives the settlement money and benefits. These are just some of the unacceptable changes Plaintiff made to D-SAMGR#1. The changes were not accepted (only minor language modifications) and Plaintiff was sent the accepted changes on December 4, 2019. **(Exhibit C)** On December 19, 2019, Plaintiff's counsel advised Plaintiff will not execute the settlement agreement. **(Exhibit D)**

Of significance is the fact that the City Manager, Michael Capabianco, resigned October 28, 2019. Thereafter Plaintiff went on an aggressive campaign of trying to meet with the Mayor in an attempt to get his job back despite Plaintiff's obligation to submit a letter of resignation per the Term Sheet to the City upon execution of a settlement agreement. Plaintiff even went so far as to petition this Court to order the Mayor to be present at a settlement conference with the Court that Plaintiff requested. Defendant filed an objection and the Court telephone conferenced the issue on February 6, 2020 [22] [23] [24].

On March 2, 2020 Plaintiff emailed a "clean" copy **(Exhibit E)** of a settlement agreement which defense counsel did a compare with Defendant's original settlement agreement (D-SAMGR #1) **(Exhibit F)** and hereafter known as "Working Copy" **(Exhibit G)**.

Defendant will address its comments and arguments for enforcement from the Working Copy. **(Exhibit G)**

1. First Paragraph – Plaintiff added Mayor John Moor and Michael Capabianco. They are employees of the City. The City is insured by the NJIIF. Neither Moor nor Capabianco are "entering into" the settlement agreement. Only the City is "entering into" the settlement agreement, which encompasses Moor and Capabianco as employees of the City. Thus, only the City Manager (Capabianco) and NJIIF counsel (Eric Nemeth) are signators to the Term Sheet on behalf of the City. Their names are not required in paragraph #1 nor in the signature lines. Only the current City Manager and the NJIIF counsel are signators on behalf of the City and NJIIF as the insurer.

   Defendant has deleted John Moor and Michael Capabianco from the first Paragraph.

2. First Paragraph – Plaintiff added Mckeon's "heirs, executors, administrators, successors and assigns" as parties to the settlement agreement. They are not. Defendant removed them.

3. Paragraph #1 (a) Defendant's included "hold harmless" which Plaintiff wishes to remove.; (b) Plaintiff is attempting to limit the release to only those claims actually asserted in the Civil Action. Defendant's language includes inclusive language for all claims and causes of actions "of any form or kind whatsoever, whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time through the date of this Agreement." The Term Sheet requires release of "all claims" against the defendants. It is

6

not limited to only those actually asserted in the Civil Action. It includes those which could have been also.

4. (a) Paragraph #1, second paragraph refers to OPRA issue. Term Sheet states, "withdrawal of pending OPRA requests related to civil litigation and no additional OPRA request or issues related to civil litigation by McKeon."

   Defendants language in the settlement agreement is, "agrees to refrain from filing any future OPRA or common law requests for information that relate in any way to Claims asserted in the civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

   Plaintiff's language which is NOT acceptable is, "agrees to refrain from filing any future OPRA or common law requests for information that are identical to those OPRA requests being withdrawn as per (c) above. Nothing herein shall be construed to limit McKeon's rights as a citizen of the City of Asbury Park to file future OPRA requests.

   Plaintiff's language does not encompass the OPRA request in the Term Sheet; Defendants' language does.

   (b) Plaintiff added an all-encompassing mutual release. Defendants' have no counterclaim against Plaintiff in the Civil Action and agreed, per the Term Sheet, to remove all pending disciplinary charges from McKeon's personnel file and to remove the management review plan which is included in the highlighted yellow section of Paragraph #2. The Term Sheet does NOT include a release from Defendants.

5. (a) Paragraph #2 - The litigation is defined in the settlement agreement as "Civil Action"; not "litigation" therefore Plaintiff's references to "litigation" are deleted and "Civil Action" re-inserted.

   (b) Paragraph #2 – Defendant will not accept Plaintiff's language, "connected to" the Civil Action because the settlement agreement releases all claims, whether asserted or not that refer or relate to the Civil Action. Defendant's language, "including but not limited to those associated with the Civil Action," back into the settlement agreement.

6. (a) Plaintiff added a #3 titled 'CONTINUED EMPLOYMENT AND BENEFITS TO McKeon" which Defendant deleted. The Term Sheet provides for Plaintiff's resignation upon execution of this agreement to be held in escrow. Plaintiff added and Defendants deleted language that Plaintiff will continue in his employment. Plaintiff added that the City "shall continue Plaintiff's employment as a salaried employee". Defendant deleted that language as it is not in the Term Sheet which requires McKeon to resign. Defendants' language reads, "the City shall continue McKeon on the City's payroll at his current salary…." This mirrors the Term Sheet language.

(b) Plaintiff then added language to vacate the August 20th, 2019 F&R Report and the Florio Report. Defendant removed this language as it is not in the Term Sheet. The Term Sheet agreed to remove pending disciplinary charges from McKeon's personnel file and remove the management review plan both of which are in the settlement agreement.

(c) Plaintiff included language to get all annual increases negotiated by his union. This language is not in the Term Sheet and has been deleted by Defendants. The Term Sheet states McKeon shall be "continued on the payroll with full pay and benefits including pension withholdings and all deductions."

(d) Plaintiff added McKeon would be entitled to insurance through the NJIIF as an employee of the City through his retirement. This is not a term in the Term Sheet. McKeon will resign effective June 30, 2020 and will no longer be entitled to insurance coverage through the City's insurer. McKeon remains covered for claims which have arisen or may arise from when he was an ACTIVE employee of the City.

7. Paragraph #3 (Plaintiff made it #4). Plaintiff added language, "except that such benefits shall inure to and give rise to a claim by his estate for the value of such benefits in the event of McKeon's death prior to all benefits contemplated hereunder having been paid by the City." There is no language in the Term Sheet addressing benefits continuing payments to McKeon's estate. This language has been deleted by Defendants.

8. Paragraph 8 (Plaintiff changed it to #9). Non-Disparagement. Plaintiff removed City officials and employees and limited it to the City, Moor and Capabianco. It is simply stupid. The "City" is comprised of its officials and employees. Then McKeon reserved his "first amendment" rights to free speech. The Term Sheet requires a, "mutual non-disparagement clause". There are no carve outs. Defendant removed all of Plaintiff's language and re-inserted a standard language non-disparagement clause.

9. Paragraph 10 is a standard indemnification clause which Plaintiff removed, and Defendant re-inserted for any claims which have been released which Defendants must defend again.

10. Paragraph 11. Plaintiff added language he could reopen and or refile his claims, suit or other proceedings in the event of a default under the settlement agreement. Defendant crossed this off. Plaintiff's remedy would be a motion to enforce settlement.

Attached hereto is Defendants' "Clean Final Copy" **(Exhibit H)**, which Defendants request this Honorable Court order Plaintiff to execute.

## LAW

Defendant's Motion to Enforce Settlement must be granted because the signed August 28, 2019 Settlement Agreement is a contract that must be enforced.

The August 28, 2019 Settlement Agreement is a written document that was signed by Plaintiff Robert McKeon, his attorney, Patricia Barasch, and by City Manager, Michael Capobianco, and Insurance Counsel, Eric Nemeth. See August 28, 2019 Settlement Agreement at Exhibit __. A settlement agreement between parties is a contract governed by basic contract principles and must be enforced. Capparelli v. Lopatin, 459 N.J. Super. 584, 603–04, 212 A.3d 979, 991–92 (App. Div. 2019).

When the parties agree to the essential terms, a settlement agreement exists. Mosley v. Femina Fashions Inc., 356 N.J. Super. 118, 126, 811 A.2d 910 (App.Div.2002), certif. denied, 176 N.J. 279 (2003). Whenever an agreement contains the principal terms required to resolve the dispute, it must be enforced. Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 421 N.J. Super. 445, 453, 24 A.3d 802 (App.Div.2011), aff'd 215 N.J. 242, 71 A.3d 888 (2013).

Plaintiff assented to the terms contained in the August 28, 2019 Settlement Agreement by personally signing the agreement. When the "parties express their intent in language in [a] settlement agreement and were represented by skilled attorneys, [the] court should not look beyond that language to understand [the] agreement." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 282 (3d Cir. 2014) (citing Lubrizol v. Exxon Corp., 871 F.2d 1279, 1283 (5th Cir. 1989)). Here, the terms of the agreement are clear, and review of the plain language therein demonstrates that Plaintiff is now attempting to breach the essential terms and to inject new unnegotiated terms in order to improve his own financial outcome from the case.

## SETTLEMENT

The settlement was reached after lengthy litigation and negotiation, during which time, Plaintiff, an attorney himself, was also represented and advised by competent counsel. The settlement was reached following a meeting of the minds and mutual assent to the terms therein. Plaintiff's delay in finalizing the settlement, disregard for the principal terms of the agreement, and improper attempt to insert new and unnegotiated terms into the final agreement represent a breach of the settlement contract. "…[A]bsent a demonstration of 'fraud or other compelling circumstances a court should enforce a settlement agreement as it would any other contract." Capparelli v. Lopatin, 459 N.J. Super. 584, 603–04, 212 A.3d 979, 991–92 (App. Div. 2019) (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25, 462 A.2d 186 (App. Div. 1983)).

Defendants are therefore entitled to enforcement of the settlement agreement as a matter of law.

## CONCLUSION

Based upon the foregoing, Defendants, respectfully request that this Court grant its Petition to Enforce Settlement Agreement.

Respectfully submitted,

**FLORIO PERRUCCI STEINHARDT CAPPELLI TIPTON & TAYLOR, LLC**
*Attorneys for Defendants*

_____
Teresa M. Lentini, Esq.