# EXHIBIT A

Page 1 of 2

McKeon v City of Asbury Park et al
Civil Action No 3:19-cv-8536

On this 28th day of August 2019, The
parties hereby agree as follows

PAB

• McKeon to release all claims against As
• McKeon to be continued on the payroll
with full pay and benefits through 6/30/20
                         └ including pension contribution
                                       & deductions

- Full medical benefits for McKeon
      from 7/1/20 through McKeon's 65th birthday.

- Payment of attorneys fees to McKelto
        Schall & Barasch in the amount of $65,000

- Payment of $90,000 to McKeon

- Mutual non-disparagement clause & indemnification of any claim asserted against McKeon while in the scope of employment
- Removal of all pending disciplinary action from McKeon's Personnel file
- Removal of Management Review Plan
- Letter of Resignation effective 6/30/20 to be held in escrow

— McKeon to withdraw all complaints
  against Capehaneo
— McKeon Withdrawal of
  — M2 complaints against Melody Harsgrave.

—  and Parsed ache the year

  additional
—  No OPRA requests or issues related
   to cirl litigation by McKeon

—  Withdrawal of pending OPRA requests
   related to civil litigation
—  Remove TV to remove furniture by 9/30/19
—  Patches for

—  Draft Settlement Agreement to be provided
   to TI's counsel by Oct 3, 2019

—  Payment of Settlement money within
   30 days of execution of agreement.

Robert McKeon
Paul A. Garard
Patricia Brasal
Attorney for McKeon

Michael Capabrane

Eric Namest   Attorney for AS

# EXHIBIT B

**Teresa Lentini**

| | |
|---|---|
| **From:** | Teresa Lentini |
| **Sent:** | Friday, October 4, 2019 9:59 AM |
| **To:** | Patricia Barasch |
| **Subject:** | McKeon v. City of Asbury Park, et al.                    Draft Settlement Agreement and Release |
| **Attachments:** | 10-4-19 Settlement Agreement and Release for Plaintiff's Counsel's Review (00774309xBA998).doc |

Patricia,

Attached please find a draft Settlement Agreement and Release for your review.  It is my understanding Mr. McKeon has removed all of his furniture and personal belongings from the City's office and therefore the removal provision  is not included in the Agreement.  Would you kindly review and advise if acceptable or provide your red lined comments.

Thank you.

Teresa


**Teresa M. Lentini, Esquire**
**Florio, Perrucci, Steinhardt & Cappelli, LLC**
1010 Kings Highway South – Bldg 2
Cherry Hill, NJ  08034
856-853-5530 (office)
856-628-8372 (direct)
856-669-1744 (cell)
856-354-8318 or 8319 (facsimile)
TLentini@floriolaw.com
www.floriolaw.com

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of October, 2019, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself and on the other hand, Robert M. McKeon (hereinafter referred to as "Plaintiff" or "McKeon"). The City, NJIIF and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party". The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

### WITNESSETH

**WHEREAS,** Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

1.     **Release and Discharge.** As partial consideration for payment of the Settlement

Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, hold harmless and discharges (the "Release") each of the City, Moor, Capabianco and the NJIIF, as well as the City's and the NJIIF's past and present officials, agents, attorneys, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities of any form or kind whatsoever, whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time through the date of this Agreement, including without limitation, any claims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act"); the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey

Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA");   New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL"), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims"). In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed  Letter of Resignation effective June 30, 2020 in the form provided in Exhibit A hereto (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending  OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that relate in any way to Claims asserted in the Civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been

duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action.  Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

2.    **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action attached as Exhibit B hereto, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims, legal fees and costs, including but not limited to those associated with the Civil Action. Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement.  Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF,  and shall be made payable to "Schall & Barasch and Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

> Patricia Barasch, Esquire, Esq.
> Schall & Barasch
> 110 Marter Avenue, Suite 105
> Moorestown, NJ 08057; and

In addition to payment of the Settlement Sum, the City shall (i) allow Plaintiff to remain as a salaried employee at his current salary, subject to all tax, social security, pension, unemployment and medical benefits withholdings, with full benefits and payroll deductions until June 30, 2020; (ii) provide Plaintiff  with full medical benefits through his 65th birthday which is _____; (iii) remove the Management Review Plan, PNDA and F&R Report  from Plaintiff's personnel file. Plaintiff acknowledges and agrees that he shall not be entitled to any salary increases from the date of this Agreement through June 30, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties to the

extent such claims arise from acts or omissions of McKeon within the scope of his active employment with the City, such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

3.     **Warranty of Capacity To Execute Agreement**.   Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified. Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

4.     **Entire Agreement**. This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement.  The Agreement shall also inure to the benefit of each Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

5.     **Representation of Comprehension of Document**.  In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

6.     **No Admission of Liability**.  Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

7.     **Tax Implication**. NJIIF makes no representations as to the tax consequences or liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf.  Plaintiff agrees that he will

pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum.  Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

8.    **Non-Disparagement**.  McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City or any employee or elected official thereof, and the City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon.

9.    **Liens**.  Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff.  If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full.  This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens.  Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum.  In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

10.    **Indemnification**.  In the event Plaintiff shall recover any monies from any person who thereafter seeks indemnification from any of the Releasees with regard to any Claims embodied in the Notice, Plaintiff shall indemnify and hold the Releasees harmless for any money spent in defending against these claims, including, but not limited to, attorneys' fees, costs of suit, judgment or settlement.

11. **Related Claims.** Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release.

12. **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13. **Law**. This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

14. **Severability**. The provisions of this Agreement are severable. If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

15. **Counterparts**. This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

16. **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.


By: _____

_____       ROBERT M. MCKEON
Witness
                            DATED:



By: _____

_____       Schall & Barasch
Witness
                            DATED:

The City of Asbury Park

By: _____

_____

Michael Capabianco
City Manager, City of Asbury Park

Witness

DATED:

The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park

By: _____

_____

ERIC J. NEMETH, ESQ.
GENERAL COUNSEL, NJIIF

Witness

DATED:

# EXHIBIT C

**Teresa Lentini**

| | |
|---|---|
| **From:** | Patricia Barasch <pbarasch@schallandbarasch.com> |
| **Sent:** | Thursday, October 24, 2019 4:10 PM |
| **To:** | Teresa Lentini |
| **Cc:** | Patricia Barasch |
| **Subject:** | RE: McKeon v. City of Asbury Park, et al.  Draft Settlement Agreement and Release |
| **Attachments:** | McKeon 10-24-19 Settlement Agreement and Release with Plaintiff's Requested Edits.doc |

Teresa,

Attached please find a redlined Agreement with Plaintiff's requested revisions.

Regards,
Patricia

*Patricia A. Barasch, Esq.*

Schall & Barasch, LLC
Attorneys at Law
Employee Rights Advocates
www.schallandbarasch.com
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
(856) 914-9200 (p)
(856) 914-9420 (f)
e-mail: pbarasch@SchallandBarasch.com
web site: www.SchallandBarasch.com



* The list of Tier 1 best law firms in New Jersey practicing in the field of employment law on behalf of individuals is compiled by U.S. News & World Report.  A description of the selection methodology can be found at www.bestlawfirms.usnews.com/methodology.aspx.  No aspect of this advertisement has been approved by the New Jersey Supreme Court.

This message and its attachments, if any, are intended only for the use of the individual or entity to whom it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication and/or its attachments is strictly prohibited. If you have received this communication in error,

please notify us immediately by telephone or email, and permanently delete or otherwise destroy the communication and its attachments without making a copy or record. Thank you.

**From:** Teresa Lentini [mailto:TLentini@floriolaw.com]
**Sent:** Friday, October 4, 2019 10:15 AM
**To:** Patricia Barasch <pbarasch@schallandbarasch.com>
**Subject:** McKeon v. City of Asbury Park, et al. Draft Settlement Agreement and Release

Patricia,

Attached please find a draft Settlement Agreement and Release for your review.  It is my understanding Mr. McKeon has removed all of his furniture and personal belongings from the City's office and therefore the removal provision  is not included in the Agreement.  Would you kindly review and advise if acceptable or provide your red lined comments.

Thank you.

Teresa


**Teresa M. Lentini, Esquire**
**Florio, Perrucci, Steinhardt & Cappelli, LLC**
1010 Kings Highway South – Bldg 2
Cherry Hill, NJ  08034
856-853-5530 (office)
856-628-8372 (direct)
856-669-1744 (cell)
856-354-8318 or 8319 (facsimile)
TLentini@floriolaw.com
www.floriolaw.com

---

**STATEMENT OF CONFIDENTIALITY:** The information contained in this transmission including any attached documentation is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify Florio, Perrucci, Steinhardt, & Cappelli LLC immediately by replying to this e-mail. Please delete all copies of this message and any attachments immediately.

**IRS CIRCULAR 230 DISCLOSURE:** As required by U.S. Treasury Regulations governing tax practice, you are advised that any written tax advice contained herein was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax penalties that may be imposed under the Internal Revenue Code.

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of October, 2019, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself, Mayor John Moor, and Michael Capabianco and on the other hand, Robert M. McKeon and his heirs, executors, administrators, successors and assigns (hereinafter referred to as "Plaintiff" or "McKeon"). The City, NJIIF, Moor, Capabianco and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party" to this Agreement. The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

> **Commented [PB1]:** Since Moor and Capabianco are named defendants and are being bound by this Agreement, they need to be named as parties to the Agreement. The NJIIF, while not a party to the litigation, is necessarily a party to this Agreement; therefore I have added that clarification to this paragraph

### WITNESSETH

**WHEREAS,** Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

{00781458.DOC v.1}

1.   1.   **Release and Discharge.** As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, ~~hold harmless~~ and discharges (the "Release") each of the City, Moor, Capabianco ~~and the NJHH~~, as well as the City's ~~and the NJHH's~~ past and present officials, agents, ~~attorneys~~, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities ~~arising out of the City's employment of Releasor for the period July 28th, 2014 through the date of this Agreement, including those claims set forth in Plaintiff's Complain herein docketed as Civil Action No. 3:19-CV-8536 MAS-DEA in the United States District Court for the District of New Jersey~~ ~~of any form or kind whatsoever, whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time through the date of this Agreement, and~~ including without limitation, any ~~related~~ claims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act");

> **Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  1"

> **Commented [PB2]:** Teresa: I have never seen this language in a Settlement Agreement and Release. In the context of this Settlement Agreement, a hold harmless clause makes no sense because there is no basis to absolve any other third parties of liability.

> **Formatted:** Superscript

the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA"); New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL"), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims"). Nothing in the foregoing paragraph shall be construed to preclude or bar McKeon from asserting legal malpractice claims arising from any attorney's representation of him in the unrelated Palubinskas matter in which McKeon was a named defendant, or arising from any attorney's involvement in the within matter. Moreover, nothing in the foregoing paragraph shall be construed to preclude or bar McKeon from asserting ethics complaints against any attorneys involved in this matter and/or the unrelated Palubinskas.

**Formatted:** Indent: Left: 1", First line: 0"

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed Letter of Resignation effective June 30, 2020 in the form provided in Exhibit A hereto (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that are identical to those OPRA requests being withdrawn as per (c) above. Nothing herein shall be construed to limit McKeon's rights as a citizen of the City of Asbury Park to file future OPRA requests, with the exception of OPRA requests being withdrawn pursuant to (c) above as well as the re-filing of identical OPRA requests in the future. relate in any way to Claims asserted in the Civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

**Commented [PB3]:** Teresa: I changed the language of subpart (d) to make it consistent with that agreed to by the parties at the Settlement Conference. I can't agree to preclude Mr. McKeon from making OPRA requests in the future that seek information about topics completely unrelated to the Civil Litigation

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act. McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days. Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period. Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled. McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action. Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

The Releasees likewise hereby fully and forever release, remit, acquit, remise and

{00781458.DOC v.1}                                                4

discharge McKeon from any and all liabilities, claims, causes of action, complaints, charges, obligations, damages, injuries, attorneys fees, costs, losses and other legal responsibilities of any kind whatsoever which Releasees have or may have had against McKeon arising out of the City's employment of Releasor, including all of those claims set forth in the Notice of Disciplinary Action filed by the City against McKeon, from the beginning of time through the date of this Agreement.

2. **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action attached as Exhibit B hereto, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims released by this Agreement, and McKeon's legal fees and costs in connection with this , including but not limited to those associated with the Civil Action. Plaintifflitigation. Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement including in this Paragraph and in Paragraph 3 below. Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF,  and shall be made payable to "Schall & Barasch and Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

> Patricia Barasch, Esquire, Esq.
> Schall & Barasch
> 110 Marter Avenue, Suite 105
> Moorestown, NJ 08057; and

**Commented [PB4]:** Teresa: Since this NJIIF is doing a separate check for attorneys fees, this second payment for compensation for alleged injuries should be made payable only to McKeon.

3. **Continued Employment and Benefits to McKeon.**  In addition to payment of the Settlement Sum, the City shall (i) allow continue Plaintiff's employment to remain as a salaried employee at his current salary, subject to all tax, social security, pension, unemployment

**Formatted:** Font: Bold, Underline
**Formatted:** Font: Bold, Underline

and medical benefits withholdings, with full benefits and payroll deductions until June 30, 2020, including payment, following Plaintiff's effective retirement date, for all accrued vacation and sick time due him from his employment from July 28th, 2014 through June 30th, 2020; (ii) provide Plaintiff with full medical benefits through his 65th birthday which is December 22nd, 2024——— ; (iii) dismiss all pending disciplinary actions against Plaintiff, remove including the June 6th, 2018 Preliminary Notice of Disciplinary Action, the April 2018 Management Review Plan, the November 13th, 2018 Revised and Amended Preliminary Notice of Disciplinary Action PNDA, andand vacate the August 30th, 2019 F&R Report, and remove those items and the Florio Report [addressing McKeon's internal complaints] from Plaintiff's personnel file. Plaintiff acknowledges and agrees that he shall not be entitled to any salary increases from the date of this Agreement through June 30, 2020. Plaintiff shall be entitled to the standard annual salary increase previously negotiated by his Union, and provided for in the Collective Bargaining Agreement, which increase takes effect and is due to all Union employees beginning on January 1st, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties, as well as other employees of the City, to the extent such claims arise from acts or omissions of McKeon within the scope of his active employment with the City, or are related in any way whatsoever to the internal complaints filed by McKeon, with such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

2.4.   **Warranty of Capacity To Execute Agreement**.   Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified, except that such benefits shall inure to and give rise to a claim by his estate for the value of such benefits in the event of McKeon's death prior to all benefits contemplated hereunder having been paid by the City. Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

4.5.   **Entire Agreement**.   This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement.   The Agreement shall also inure to the benefit of each

Commented [PB5]: Teresa: It is my understanding that there is an established practice under the collective bargaining agreement for the City to pay out the retiring employee a lump sum payment for accrued and unused vacation and sick time.

Formatted: Superscript
Formatted: Superscript
Formatted: Superscript
Formatted: Superscript
Formatted: Superscript
Formatted: Superscript

Formatted: Superscript

Commented [PB6]: Teresa: I removed the word "active" as it is unnecessary.

Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

66. **Representation of Comprehension of Document**. In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

67. **No Admission of Liability**. Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

68. **Tax Implication**. NJIIF makes no representations as to the tax consequences or liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf. Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum. Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

69. **Non-Disparagement**. McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City, Carabineo and Moor, with the specific exception that nothing herein shall ban or prohibit McKeon's right to make public statements with regard to the subject matter of this litigation and the Internal Complaints filed by McKeon, and that the non-disparagement obligation shall apply only to the extent that it does not violate McKeon's First Amendment rights to free speech, nor violate McKeon's rights pursuant to N.J. Senate Bill 121, which amended the New Jersey Law Against Discrimination.

{00781458.DOC v.1}                               7

N.J.S.A. 10:5-12, and went into effect on March 18th, 2019,  or any employee or elected official thereof, and t]he City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon. Capabianco and Moor covenant and agree to make no disparaging or false allegations or comments intended to harm the reputation of McKeon.  Nothing in the foregoing shall preclude McKeon, as a citizen of the City of Asbury Park, from commenting on, or expressing opinions on, matters of public importance relating to the City of Asbury Park, notwithstanding that such matters are related in any way whatsoever to the subject matter of the within litigation.

Formatted: Superscript

Commented [PB7]: Teresa  Since Capabianco and Moor are named defendants, they need to expressly covenant and agree to the non-disparagement obligations.

Commented [PB8]: Teresa: McKeon still lives in the City and his right to comment on issues of public importance relating to the City cannot be restricted.

9.10.    **Liens.**  Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff.  If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full.  This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens.  Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum.  In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

10.     Indemnification.  In the event Plaintiff shall recover any monies from any person who thereafter seeks indemnification from any of the Releasees with regard to any Claims embodied in the Notice, Plaintiff shall indemnify and hold the Releasees harmless for any money spent in defending against these claims, including, but not limited to, attorneys' fees, costs of suit, judgment or settlement.

Commented [PB9]: Teresa  While I don't understand the purpose of this Paragraph, I cannot agree to any provision under which McKeon would indemnify the City for some potentially unlimited amount of defense fees and costs, etc.

Formatted: Indent: First line:  0.5", Space After:  0 pt, No page break before

11.     **Related Claims.**  Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release, except in the event of a default in the terms of this Settlement Agreement and Mutual Release by

the Defendants and/or the NJIIF.

12.   **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.   **Law**. This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

1415.   **Severability**. The provisions of this Agreement are severable. If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

1516.   **Counterparts**. This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

1617.   **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.

By: _____
ROBERT M. MCKEON

_____
Witness

DATED:

By: _____
Schall & Barasch

_____
Witness

DATED:

The City of Asbury Park

By: _____

_____
Witness

Michael Capabianco
City Manager, City of Asbury Park

DATED:

Michael Capabianco

By: _____

_____
Witness

Michael Capabianco

DATED:

John Moor

By: _____

_____
Witness

John Moor

DATED:

**Commented [PB10]:** Teresa: Since Capabianco and Moor are named defendants, we need to have signature lines for them as well

The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park

{00781458.DOC v.1}                              10

By: _____
                ERIC J. NEMETH, ESQ.
                GENERAL COUNSEL, NJIIF

_____
Witness

        DATED:

# EXHIBIT D

**Teresa Lentini**

| | |
|---|---|
| **From:** | Teresa Lentini |
| **Sent:** | Wednesday, December 4, 2019 4:57 PM |
| **To:** | Patricia Barasch |
| **Subject:** | McKeon v. City of Asbury Park                    Settlement Agreement and Mutual Release |
| **Attachments:** | Defendant's mark up to Plaintiff's red lined settlement agreement (00794230xBA998).doc |

Patricia

Attached is your red lined version of the City's proposed Settlement Agreement and Mutual Release.  The language highlighted in yellow is acceptable.  All other red lined language is not acceptable.

Kindly review and contact me to discuss.

Teresa


**Teresa M. Lentini, Esquire**
**Florio, Perrucci, Steinhardt & Cappelli, LLC**
1010 Kings Highway South – Bldg 2
Cherry Hill, NJ  08034
856-853-5530 (office)
856-628-8372 (direct)
856-669-1744 (cell)
856-354-8318 or 8319 (facsimile)
TLentini@floriolaw.com
www.floriolaw.com

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of October, 2019, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as  "Asbury Park" or the "City") and the City itself, Mayor John Moor, and Michael Capabianco and on the other hand, Robert M. McKeon and his heirs, executors, administrators, successors and assigns  (hereinafter referred to as "Plaintiff" or "McKeon").  The City, NJIIF, Moor, Capabianco and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party" to this Agreement. The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

> **Commented [PB1]:** Since Moor and Capabianco are named defendants and are being bound by this Agreement, they need to be named as parties to the Agreement.  The NJIIF, while not a party to the litigation, is necessarily a party to this Agreement; therefore I have added that clarification to this paragraph.

### WITNESSETH

**WHEREAS**, Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS**, the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS**, the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS**, the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

{00794230.DOC v.1}

1.    **Release and Discharge**. As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, hold harmless and discharges (the "Release") each of the City, Moor, Capabianco and the NJHF, as well as the City's and the NJHF's past and present officials, agents, attorneys, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities arising out of the City's employment of Releasor for the period July 28th, 2014 through the date of this Agreement, including those claims set forth in Plaintiff's Complaint herein docketed as Civil Action No. 3:19-CV-8536 MAS-DEA in the United States District Court for the District of New Jersey of any form or kind whatsoever, whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time through the date of this Agreement, and including without limitation, any related claims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act");

*Formatted:* Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  1"

*Commented [PB2]:* Teresa: I have never seen this language in a Settlement Agreement and Release. In the context of this Settlement Agreement, a hold harmless clause makes no sense because there is no basis to absolve any other third parties of liability.

*Formatted:* Superscript

{00794230.DOC v.1}                    2

the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"; the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA") the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA"); New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL"), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims"). Nothing in the foregoing paragraph shall be construed to preclude or bar McKeon from asserting legal malpractice claims arising from any attorney's representation of him in the unrelated Palubinskas matter in which McKeon was a named defendant, or arising from any attorney's involvement in the within matter. Moreover, nothing in the foregoing paragraph shall be construed to preclude or bar McKeon from asserting ethics complaints against any attorneys involved in this matter and/or the unrelated Palubinskas.

{00794230.DOC v.1}                              3

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed  Letter of Resignation effective June 30, 2020 in the form provided in Exhibit A hereto (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending  OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that are identical to those OPRA requests being withdrawn as per (c) above. Nothing herein shall be construed to limit McKeon's rights as a citizen of the City of Asbury Park to file future OPRA requests, with the exception of OPRA requests being withdrawn pursuant to (c) above as well as the re-filing of identical OPRA requests in the future.   relate in any way to Claims asserted in the Civil Action. Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

> **Formatted:** Indent: Left: 1", First line: 0"

> **Commented [PB3]:** Teresa: I changed the language of subpart (d) to make it consistent with that agreed to by the parties at the Settlement Conference. I can't agree to preclude Mr. McKeon from making OPRA requests in the future that seek information about topics completely unrelated to the Civil Litigation.

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action.  Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

The Releasees likewise hereby fully and forever release, remit, acquit, remise and

{00794230.DOC v.1}                                          4

discharge McKeon from any and all liabilities, claims, causes of action, complaints, charges, obligations, damages, injuries, attorneys fees, costs, losses and other legal responsibilities of any kind whatsoever which Releasees have or may have had against McKeon arising out of the City's employment of Releasor, including all of those claims set forth in the Notice of Disciplinary Action filed by the City against McKeon, from the beginning of time through the date of this Agreement.

2.   **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action attached as Exhibit B hereto, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims relating to the Grievance, and of all of his legal fees and costs in prosecuting this case, subject to the terms in this Agreement, McKeon as to these Funds (Settlement Sum) hereby acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Release, other than the Settlement Sum and as specifically set forth in this Agreement (expressly in this Paragraph and in Paragraph 3 below). Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF,  and shall be made payable to "Schall & Barasch and Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

Patricia Barasch, Esquire, Esq.
Schall & Barasch
110 Marter Avenue, Suite 105
Moorestown, NJ 08057; and

3.   **Continued Employment and Benefits to McKeon.**  In addition to payment of the Settlement Sum, the City shall (i) allow continue Plaintiff's employment to remain as a salaried employee at his current salary, subject to all tax, social security, pension, unemployment

> **Commented [PB4]:** Teresa: Since this NJIIF is doing a separate check for attorneys fees, this second payment for compensation for alleged injuries should be made payable only to McKeon

> **Formatted:** Font: Bold, Underline
> **Formatted:** Font: Bold, Underline

and medical benefits withholdings, with full benefits and payroll deductions until June 30, 2020, regarding payments following Plaintiff's effective retirement date for all accrued, accumulated and back-time days and credit for employment from July 26th, 2018 through June 30th, 2020; (ii) provide Plaintiff  with full medical benefits through his 65th birthday which is December 9th, 2032; (iii) dismiss all pending disciplinary action against Plaintiff, dismiss everything the June 6th, 2018 Preliminary Notice of Disciplinary Action, the April 2019 Management Review Plan, the November 19th, 2018 Rossner and Associates Disciplinary Notice of Termination Hearing, and and vacate the August 26th, 2019 F&R Report, and remove those items and the Florio Report [addressing McKeon's internal complaints] from Plaintiff's personnel file. Plaintiff acknowledges and agrees that he shall not be entitled to any salary increases from the date of this Agreement through June 30, 2020. Plaintiff shall be entitled to the standard annual salary increase previously negotiated by his Union, and provided for in the Collective Bargaining Agreement, which increase takes effect and is due to all Union employees beginning on January 1st, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties, as well as other employees of the City, to the extent such claims arise from acts or omissions of McKeon within the scope of his active employment with the City, or are related in any way whatsoever to the Internal complaints filed by McKeon, with such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

4.4.	**Warranty of Capacity To Execute Agreement**.   Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified, except that such benefits shall inure to and give rise to a claim by his estate for the value of such benefits in the event of McKeon's death prior to all benefits contemplated hereunder having been paid by the City. Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

4.5.	**Entire Agreement**.  This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement.  The Agreement shall also inure to the benefit of each

**Commented [PB5]:** Teresa: It is my understanding that there is an established practice under the collective bargaining agreement for the City to pay out the retiring employee a lump sum payment for accrued and unused vacation and sick time

**Formatted:** Superscript

**Formatted:** Superscript

**Commented [PB6]:** Teresa: I removed the word "active" as it is unnecessary

Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

46.    **Representation of Comprehension of Document**.  In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

47.    **No Admission of Liability**.  Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

48.    **Tax Implication**.  NJIIF makes no representations as to the tax consequences or liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf.  Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum.  Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

49.    **Non-Disparagement**.  McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City, Capabianco and Moor, with the specific exception that nothing herein shall ban or prohibit McKeon's right to make public statements with regard to the subject matter of this litigation and the Internal Complaints filed by McKeon, and that the non-disparagement obligation shall apply only to the extent that it does not violate McKeon's First Amendment rights to free speech, nor violate McKeon's rights pursuant to N.J. Senate Bill 121, which amended the New Jersey Law Against Discrimination.

{00794230.DOC v.1}                                   7

N.J.S.A. 10:5-12, and went into effect on March 18th, 2019,   or any employee or elected official
thereof, and tThe City and its elected officials and employees shall be advised not to make any
disparaging or false allegations or comments intended to harm the reputation of McKeon.
Capabianco and Moor covenant and agree to make no disparaging or false allegations or
comments intended to harm the reputation of McKeon. Nothing in the foregoing shall preclude
McKeon, as a citizen of the City of Asbury Park, from commenting on, or expressing opinions
on, matters of public importance relating to the City of Asbury Park, notwithstanding that such
matters are related in any way whatsoever to the subject matter of the within litigation.

**Formatted:** Superscript

**Commented [PB7]:** Teresa: Since Capabianco and Moor are named defendants, they need to expressly covenant and agree to the non-disparagement obligations.

**Commented [PB8]:** Teresa: McKeon still lives in the City and his right to comment on issues of public importance relating to the City cannot be restricted.

910.    **Liens.**  Plaintiff hereby represents that no liens, including but not limited to, any
Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist,
they will be paid in full, compromised or satisfied and released by Plaintiff.  If a lien exists
which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce
that lien, Plaintiff agrees that he will pay that lien in full.  This representation and covenant are
intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens,
Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or
common law liens, and judgment liens.  Plaintiff agrees to indemnify and hold the Releasees
harmless in connection with any claim made against Plaintiff by reason of liens against or tax
obligations associated with the proceeds of the Settlement Sum.  In the event a claim is hereafter
made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking
payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and
City, harmless for any money spent in paying any such liens and/or defending against such a
claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

10.    Indemnification.  In the event Plaintiff shall recover any monies from any person
who thereafter seeks indemnification from any of the Releasees, with regard to any Claims
embodied in the Notice, Plaintiff shall indemnify and hold the Releasees harmless for any money
spent in defending against these claims, including, but not limited to, attorneys' fees, costs of
suit, judgment or settlement.

**Commented [PB9]:** Teresa: While I don't understand the purpose of this Paragraph, I cannot agree to any provision under which McKeon would indemnify the City for some potentially unlimited amount of defense fees and costs, etc.

**Formatted:** Indent: First line: 0.5", Space After:  0 pt, No page break before

11.    **Related Claims.**  Plaintiff promises and agrees not to file, re-file, appeal,
initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based
upon, arising out of, or related to any claims and causes of action subsumed within the Release,
except in the event of a default in the terms of this Settlement Agreement and Mutual Release by

the Defendants and/or the NJHE.

12.      **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.      **Law**. This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

14.15.      **Severability**. The provisions of this Agreement are severable. If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

15.16.      **Counterparts**. This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

16.17.      **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.


By:      _____

_____
Witness                             ROBERT M. MCKEON

DATED:


By:      _____

_____
Witness                             Schall & Barasch

DATED:


{00794230.DOC v.1}                             9

The City of Asbury Park

By: _____

_____          Michael Capabianco
Witness                                   City Manager, City of Asbury Park

                   DATED:


                              Michael Capabianco ............

                   By: _____
_____          Michael Capabianco
Witness

                   DATED:

                              John Moor

                   By: _____
_____          John Moor
Witness

                   DATED:

> **Commented [PB10]:** Teresa: Since Capabianco and Moor are named defendants, we need to have signature lines for them as well


The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park


{00794230.DOC v.1}                      10

By: _____
_____
Witness

ERIC J. NEMETH, ESQ.
GENERAL COUNSEL, NJIIF

DATED:

# EXHIBIT E

**Teresa Lentini**

| | |
|---|---|
| **From:** | Patricia Barasch <pbarasch@schallandbarasch.com> |
| **Sent:** | Thursday, December 19, 2019 1:18 PM |
| **To:** | Teresa Lentini |
| **Cc:** | Patricia Barasch |
| **Subject:** | RE: McKeon v. City of Asbury Park |
| **Attachments:** | McKeon 10-24-19 Settlement Agreement and Release with Plaintiff's Requested Edits.doc |

Teresa,

In response to your email, please be advised of the following:

First, Mr. McKeon has not been contacting City employees as you suggest.  Rather, it was Cassandra who recently reached out to him, and any conversations he has had with Cassandra and/or Joe have been in their capacity as his Union representatives.  As you know, he is still an employee and a member of the Union, and as such, is entitled to communicate with his Union representatives.

Second, as for the NJIIF's response to plaintiff's redline which you forwarded on December 4th, I would again note that you fail to incorporate most, if not all, of the requested changes.  Therefore, Mr. McKeon is not agreeable to signing your 12/4 redline.  He remains willing to sign the redlined Agreement I forwarded to you on October 24th, 2019 with our requested changes.  I attach it here again for your convenience. If you have any questions, give a call.

Thanks,

Patricia

*Patricia A. Barasch, Esq.*

Schall & Barasch, LLC
Attorneys at Law
Employee Rights Advocates
www.schallandbarasch.com
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
(856) 914-9200 (p)
(856) 914-9420 (f)
e-mail: pbarasch@SchallandBarasch.com
web site: www.SchallandBarasch.com



* The list of Tier 1 best law firms in New Jersey practicing in the field of employment law on behalf of individuals is compiled by U.S. News & World Report.  A description of the selection methodology can be found at

www.bestlawfirms.usnews.com/methodology.aspx.  No aspect of this advertisement has been approved by the New Jersey Supreme Court.

This message and its attachments, if any, are intended only for the use of the individual or entity to whom it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication and/or its attachments is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or email, and permanently delete or otherwise destroy the communication and its attachments without making a copy or record. Thank you.

**From:** Teresa Lentini [mailto:TLentini@floriolaw.com]
**Sent:** Tuesday, December 17, 2019 5:04 PM
**To:** Patricia Barasch <pbarasch@schallandbarasch.com>
**Subject:** McKeon v. City of Asbury Park
**Importance:** High

Patricia,

Mr. McKeon has continued to approach, text, email and call City of Asbury Park employees, council members, mayor and city attorney repeatedly regarding his federal employment case.  Mr. McKeon is an attorney at law and as such is well aware he is violating numerous provisions of the rules for professional conduct.  The City, including all employees, Mayor, council members, etc are represented by my law firm.  Please advise your attorney-client that he is to immediately cease and desist or I will obtain a federal order requiring him to do so, seek attorney fees and costs as well as file disciplinary charges.  He can explain his conduct to a federal judge.

We have not received a response to the NJIIF's response to plaintiff's red line to the NJIIF original settlement agreement and mutual release therefore a motion to enforce settlement will be filed.

**Teresa M. Lentini, Esquire**
**Florio, Perrucci, Steinhardt & Cappelli, LLC**
1010 Kings Highway South – Bldg 2
Cherry Hill, NJ  08034
856-853-5530 (office)
856-628-8372 (direct)
856-669-1744 (cell)
856-354-8318 or 8319 (facsimile)
TLentini@floriolaw.com
www.floriolaw.com

**STATEMENT OF CONFIDENTIALITY:** The information contained in this transmission including any attached documentation is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify Florio, Perrucci, Steinhardt, & Cappelli LLC immediately by replying to this e-mail. Please delete all copies of this message and any attachments immediately.

**IRS CIRCULAR 230 DISCLOSURE:** As required by U.S. Treasury Regulations governing tax practice, you are advised that any written tax advice contained herein was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding tax penalties that may be imposed under the Internal Revenue Code.

### SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of October, 2019, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself, Mayor John Moor, and Michael Capabianco and on the other hand, Robert M. McKeon and his heirs, executors, administrators, successors and assigns (hereinafter referred to as "Plaintiff" or "McKeon"). The City, NJIIF, Moor, Capabianco and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party" to this Agreement. The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

### WITNESSETH

**WHEREAS,** Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

**Commented [PB1]:** Since Moor and Capabianco are named defendants and are being bound by this Agreement, they need to be named as parties to the Agreement. The NJIIF, while not a party to the litigation, is necessarily a party to this Agreement, therefore I have added that clarification to this paragraph.

{00774309.DOC v.1}

1.   1.   **Release and Discharge.** As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, ~~hold harmless~~ and discharges (the "Release") each of the City, Moor, Capabianco ~~and the NJHF~~, as well as the City's ~~and the NJHF's~~ past and present officials, agents, ~~attorneys~~, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities ~~arising out of the City's employment of Releasor for the period July 28th, 2014 through the date of this Agreement, including those claims set forth in Plaintiff's Complaint herein docketed as Civil Action No. 3:19-CV-8536 MAS-DEA in the United States District Court for the District of New Jersey~~ ~~of any form or kind whatsoever, whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time through the date of this Agreement,~~ and including without limitation, any ~~related~~ claims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act");

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.5" + Indent at:  1"

**Commented [PB2]:** Teresa  I have never seen this language in a Settlement Agreement and Release. In the context of this Settlement Agreement, a hold harmless clause makes no sense because there is no basis to absolve any other third parties of liability.

**Formatted:** Superscript

the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientous Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA"); New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL"), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims"). Nothing in the foregoing paragraph shall be construed to preclude or bar McKeon from asserting legal malpractice claims arising from any attorney's representation of him in the unrelated Palubinskas matter in which McKeon was a named defendant, or arising from any attorney's involvement in the within matter. Moreover, nothing in the foregoing paragraph shall be construed to preclude or bar McKeon from asserting ethics complaints against any attorneys involved in this matter and/or the unrelated Palubinskas.

**Formatted:** Indent: Left: 1", First line: 0"

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed Letter of Resignation effective June 30, 2020 in the form provided in Exhibit A hereto (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending  OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that are identical to those OPRA requests being withdrawn as per (c) above. Nothing herein shall be construed to limit McKeon's rights as a citizen of the City of Asbury Park to file future OPRA requests, with the exception of OPRA requests being withdrawn pursuant to (c) above as well as the re-filing of identical OPRA requests in the future.   relate in any way to Claims asserted in the Civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

**Commented [PB3]:** Teresa  I changed the language of subpart (d) to make it consistent with that agreed to by the parties at the Settlement Conference  I can't agree to preclude Mr. McKeon from making OPRA requests in the future that seek information about topics completely unrelated to the Civil Litigation

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action.  Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

The Releasees likewise hereby fully and forever release, remit, acquit, remise and

discharge McKeon from any and all liabilities, claims, causes of action, complaints, charges, obligations, damages, injuries, attorneys fees, costs, losses and other legal responsibilities of any kind whatsoever which Releasees have or may have had against McKeon arising out of the City's employment of Releasor, including all of those claims set forth in the Notice of Disciplinary Action filed by the City against McKeon, from the beginning of time through the date of this Agreement.

2.    **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action attached as Exhibit B hereto, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims released by this Agreement, and McKeon's legal fees and costs in connection with this ; including but not limited to those associated with the Civil Action. Plaintifflitigation. Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement, including in this Paragraph and in Paragraph 3 below. Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF,  and shall be made payable to "Schall & Barasch and Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

> Patricia Barasch, Esquire, Esq.
> Schall & Barasch
> 110 Marter Avenue, Suite 105
> Moorestown, NJ 08057; and

**Commented [PB4]:** Teresa  Since this NJIIF is doing a separate check for attorneys fees, this second payment for compensation for alleged injuries should be made payable only to McKeon.

3.    **Continued Employment and Benefits to McKeon.**  In addition to payment of the Settlement Sum, the City shall (i) allow  continue Plaintiff's employment to remain as a salaried employee at his current salary, subject to all tax, social security, pension, unemployment

**Formatted:** Font: Bold, Underline

**Formatted:** Font: Bold, Underline

and medical benefits withholdings, with full benefits and payroll deductions until June 30, 2020, including payment, following Plaintiff's effective retirement date, for all accrued vacation and sick time due him from his employment from July 28th, 2014 through June 30th, 2020; (ii) provide Plaintiff with full medical benefits through his 65th birthday which is December 22nd, 2024————; (iii) dismiss all pending disciplinary actions against Plaintiff, remove including the June 6th, 2018 Preliminary Notice of Disciplinary Action, the April 2018 Management Review Plan, the November 13th, 2018 Revised and Amended Preliminary Notice of Disciplinary ActionPNDA, andand vacate the August 20th, 2019 F&R Report, and remove those items and the Florio Report [addressing McKeon's internal complaints] from Plaintiff's personnel file. Plaintiff acknowledges and agrees that he shall not be entitled to any salary increases from the date of this Agreement through June 30, 2020. Plaintiff shall be entitled to the standard annual salary increase previously negotiated by his Union, and provided for in the Collective Bargaining Agreement, which increase takes effect and is due to all Union employees beginning on January 1st, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties, as well as other employees of the City, to the extent such claims arise from acts or omissions of McKeon within the scope of his active employment with the City, or are related in any way whatsoever to the internal complaints filed by McKeon, with such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

3.4.  **Warranty of Capacity To Execute Agreement**. Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified, except that such benefits shall inure to and give rise to a claim by his estate for the value of such benefits in the event of McKeon's death prior to all benefits contemplated hereunder having been paid by the City. Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

4.5.  **Entire Agreement**. This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement. The Agreement shall also inure to the benefit of each

{00774309.DOC v.1}                                6

---

**Commented [PB5]:** Teresa It is my understanding that there is an established practice under the collective bargaining agreement for the City to pay out the retiring employee a lump sum payment for accrued and unused vacation and sick time

**Formatted:** Superscript
**Formatted:** Superscript
**Formatted:** Superscript
**Formatted:** Superscript
**Formatted:** Superscript
**Formatted:** Superscript

**Formatted:** Superscript

**Commented [PB6]:** Teresa I removed the word "active" as it is unnecessary

Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

66.   **Representation of Comprehension of Document**.  In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

67.   **No Admission of Liability**.  Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

68.   **Tax Implication**.  NJIIF makes no representations as to the tax consequences or liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf.  Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum.  Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

69.   **Non-Disparagement**.  McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City, Capablanco and Moor, with the specific exception that nothing herein shall ban or prohibit McKeon's right to make public statements with regard to the subject matter of this litigation and the Internal Complaints filed by McKeon, and that the non-disparagement obligation shall apply only to the extent that it does not violate McKeon's First Amendment rights to free speech, nor violate McKeon's rights pursuant to N.J. Senate Bill 121, which amended the New Jersey Law Against Discrimination.

{00774309.DOC v.1}                            7

N.J.S.A. 10:5-12, and went into effect on March 18th, 2019, or any employee or elected official thereof, and tThe City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon. Capabianco and Moor covenant and agree to make no disparaging or false allegations or comments intended to harm the reputation of McKeon. Nothing in the foregoing shall preclude McKeon, as a citizen of the City of Asbury Park, from commenting on, or expressing opinions on, matters of public importance relating to the City of Asbury Park, notwithstanding that such matters are related in any way whatsoever to the subject matter of the within litigation.

> **Formatted:** Superscript

> **Commented [PB7]:** Teresa: Since Capabianco and Moor are named defendants, they need to expressly covenant and agree to the non-disparagement obligations

> **Commented [PB8]:** Teresa: McKeon still lives in the City and has right to comment on issues of public importance relating to the City cannot be restricted

910.   **Liens.**   Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff.   If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full.   This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens.   Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum.   In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

12.   Indemnification.   In the event Plaintiff shall recover any monies from any person who thereafter seeks indemnification from any of the Releasees with regard to any Claims embodied in the Notice, Plaintiff shall indemnify and hold the Releasees harmless for any money spent in defending against these claims, including, but not limited to, attorneys' fees, costs of suit, judgment or settlement.

11.   **Related Claims.**   Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release except in the event of a default in the terms of this Settlement Agreement and Mutual Release by

> **Commented [PB9]:** Teresa: While I don't understand the purpose of this Paragraph, I cannot agree to any provision under which McKeon would indemnify the City for some potentially unlimited amount of defense fees and costs, etc.

> **Formatted:** Indent: First line: 0.5", Space After: 0 pt, No page break before

the Defendants and/or the NJIIF.

12.     **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.     **Law**. This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

1415.   **Severability**. The provisions of this Agreement are severable. If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

1516.   **Counterparts**. This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

1617.   **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.


By: _____

_____        ROBERT M. MCKEON
Witness

DATED:


By: _____

_____        Schall & Barasch
Witness

DATED:


{00774309.DOC v.1}                    9

The City of Asbury Park

By: _____

_____

Michael Capabianco
City Manager, City of Asbury Park

Witness

DATED:

Michael Capabianco

By: _____

Michael Capabianco

Witness

DATED:

> **Commented [PB10]:** Teresa  Since Capabianco and Moor are named defendants, we need to have signature lines for them as well

John Moor

By: _____

John Moor

Witness

DATED:

The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park

{00774309.DOC v.1}

10

By:  _____
     ERIC J. NEMETH, ESQ.
     GENERAL COUNSEL, NJIIF

_____

Witness

     DATED:

# EXHIBIT F

**Teresa Lentini**

| | |
|---|---|
| **From:** | Patricia Barasch <pbarasch@schallandbarasch.com> |
| **Sent:** | Monday, March 2, 2020 8:34 AM |
| **To:** | Teresa Lentini |
| **Cc:** | Patricia Barasch |
| **Subject:** | McKeon Settlement Agreement |
| **Attachments:** | McKeon Plaintiff's CLEAN 2 28 20 Proposed Final Agreement.doc |

**Importance:**        High

Teresa,
Following up on our most recent conversation, attached please find a further revised Agreement that Mr. McKeon is prepared to execute.  With these concessions, I hope we can bring this matter to a final resolution.  I look forward to hearing back from you at your earliest convenience.
Thanks,
Patricia

*Patricia A. Barasch, Esq.*

**Schall & Barasch, LLC**
**Attorneys at Law**
**Employee Rights Advocates**
www.schallandbarasch.com
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
(856) 914-9200 (p)
(856) 914-9420 (f)
e-mail: pbarasch@SchallandBarasch.com
web site: www.SchallandBarasch.com



* The list of Tier 1 best law firms in New Jersey practicing in the field of employment law on behalf of individuals is compiled by U.S. News & World Report.  A description of the selection methodology can be found at www.bestlawfirms.usnews.com/methodology.aspx.  No aspect of this advertisement has been approved by the New Jersey Supreme Court.

This message and its attachments, if any, are intended only for the use of the individual or entity to whom it is addressed, and may contain information that is PRIVILEGED, CONFIDENTIAL and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying

of this communication and/or its attachments is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or email, and permanently delete or otherwise destroy the communication and its attachments without making a copy or record. Thank you.

<u>**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**</u>

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of March 2020, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself, Mayor John Moor, and Michael Capabianco and on the other hand, Robert M. McKeon and his heirs, executors, administrators, successors and assigns (hereinafter referred to as "Plaintiff" or "McKeon").  The City, NJIIF, Moor, Capabianco and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party" to this Agreement. The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

<u>**WITNESSETH**</u>

**WHEREAS**, Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

1.     **Release and Discharge.** As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, and discharges (the "Release") each of the City, Moor, Capabianco, and the NJIF, as well as the City's and the NJIF's past and present officials, agents, attorneys, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities arising out of the City's employment of Releasor for the period July 28th, 2014 through the date of this Agreement, including those claims set forth in Plaintiff's Complaint herein docketed as Civil Action No. 3:19-CV-8536 MAS-DEA in the United States District Court for the District of New Jersey and including without limitation, any related claims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act"); the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41

U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA");   New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims.").

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed  Letter of Resignation effective June 30, 2020 in the form provided in Exhibit A hereto (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending  OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that are identical to those OPRA requests being withdrawn as per (c) above. Nothing herein shall be construed to limit McKeon's rights as a citizen of the City of Asbury Park to file future OPRA requests.

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement,

he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action.  Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

The Releasees likewise hereby fully and forever release, remit, acquit, remise and discharge McKeon from any and all liabilities, claims, causes of action, complaints, charges, obligations, damages, injuries, attorneys fees, costs, losses and other legal responsibilities of any kind whatsoever which Releasees have or may have had against McKeon arising out of the City's employment of Releasor, including all of those claims set forth in the Notice of Disciplinary Action filed by the City against McKeon, from the beginning of time through the date of this Agreement.

2.  **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action attached as Exhibit B hereto, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims released by this Agreement, and McKeon's legal fees and costs in connection with this litigation. Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement, including in this Paragraph and in Paragraph 3 below.  Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF, and shall be made payable to "Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

Patricia Barasch, Esquire, Esq.
Schall & Barasch
110 Marter Avenue, Suite 105
Moorestown, NJ 08057; and

3.     **Continued Employment and Benefits to McKeon.**   In addition to payment of the Settlement Sum, the City shall (i) continue Plaintiff's employment as a salaried employee at his current salary, subject to all tax, social security, pension, unemployment and medical benefits withholdings, with full benefits and payroll deductions until June 30, 2020, including payment, following Plaintiff's effective retirement date, for all accrued vacation and sick time due him from his employment from July 28th, 2014 through June 30th, 2020; (ii) provide Plaintiff with full medical benefits through his 65th birthday which is December 22nd, 2024; (iii) dismiss all pending disciplinary actions against Plaintiff, including, the June 6th, 2018 Preliminary Notice of Disciplinary Action, the April 2018 Management Review Plan, the November 13th, 2018 Revised and Amended Preliminary Notice of Disciplinary Action, and vacate the August 20th, 2019 F&R Report, and remove those items and the Florio Report [addressing McKeon's internal complaints] from Plaintiff's personnel file. Plaintiff shall be entitled to the standard annual salary increase previously negotiated by his Union, and provided for in the Collective Bargaining Agreement, which increase takes effect and is due to all Union employees beginning on January 1st, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties to the extent such claims arise from acts or omissions of McKeon within the scope of his employment with the City, such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

4.     **Warranty of Capacity To Execute Agreement.**   Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified, except that such benefits shall inure to and give rise to a claim by his estate for the value of such benefits in the event of McKeon's death prior to all benefits contemplated hereunder having been paid by the City. Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands,

obligations or causes of action referred to in this Agreement.

5.  **Entire Agreement**.  This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement.  The Agreement shall also inure to the benefit of each Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

6.  **Representation of Comprehension of Document**.  In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

7.  **No Admission of Liability**.  Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

8.  **Tax Implication**.  NJIIF makes no representations as to the tax consequences or liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf.  Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum.  Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

9.  **Non-Disparagement**.  McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City, Capabianco and Moor, with the specific exception that nothing herein shall ban or prohibit McKeon's right to make

{00794230.DOC v.1}                                    6

public statements with regard to the subject matter of this litigation and the Internal Complaints filed by McKeon, and that the non-disparagement obligation shall apply only to the extent that it does not violate McKeon's First Amendment rights to free speech, nor violate McKeon's rights pursuant to N.J. Senate Bill 121, which amended the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, and went into effect on March 18th, 2019. The City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon. Capabianco and Moor covenant and agree to make no disparaging or false allegations or comments intended to harm the reputation of McKeon. Nothing in the foregoing shall preclude McKeon, as a citizen of the City of Asbury Park, from commenting on, or expressing opinions on, matters of public importance relating to the City of Asbury Park, notwithstanding that such matters are related in any way whatsoever to the subject matter of the within litigation.

10. **Liens**. Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff. If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full. This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens. Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum. In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

11. **Related Claims.** Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release, except in the event of a default in the terms of this Settlement Agreement and Mutual Release by the Defendants and/or the NJIIF.

12.     **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.     **Law**.  This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

14.     **Severability**.  The provisions of this Agreement are severable.  If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

15.     **Counterparts**.  This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

16.     **Representation by Counsel**.  Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.

By: _____

_____        ROBERT M. MCKEON
Witness

DATED:

By: _____

_____        Schall & Barasch
Witness

DATED:

                                        The City of Asbury Park

By: _____

_____        City Manager, City of Asbury Park
Witness

DATED:


                                        Michael Capabianco


{00794230.DOC v.1}                      8

By: _____
　　　Michael Capabianco

_____

_____
Witness

DATED:

　　　John Moor

By: _____
　　　John Moor

_____

_____
Witness

DATED:


The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park


By: _____
　　　ERIC J. NEMETH, ESQ.
_____　GENERAL COUNSEL, NJIIF

_____
Witness

DATED:

# EXHIBIT G

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of ~~October, 2019~~March 2020, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself, Mayor John Moor, and Michael Capabianco and on the other hand, Robert M. McKeon and his heirs, executors, administrators, successors and assigns (hereinafter referred to as "Plaintiff" or "McKeon"). The City, NJIIF, Moor, Capabianco and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party"." to this Agreement. The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

### WITNESSETH

**WHEREAS**, Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

**WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

**WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

**WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

1.      **Release and Discharge.** As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, ~~hold harmless~~ and discharges (the "Release") each of the City, Moor, Capabianco, and the ~~NJIIF~~NJIF, as well as the City's and the ~~NJIIF's~~NJIF's past and present officials, agents, attorneys, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities arising out of ~~any form or kind whatsoever, whether vested or contingent, which~~ the City's employment of Releasor ~~has or may have against Releasees from the beginning of time~~for the period July 28th, 2014 through the date of this Agreement, including those claims set forth in Plaintiff's Complaint herein docketed as Civil Action No. 3:19-CV-8536 MAS-DEA in the United States District Court for the District of New Jersey and including without limitation, any related claims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act"); the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination

Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA");  New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL"), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims").  .").

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed  Letter of Resignation effective June 30, 2020 in the form provided in Exhibit A hereto (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending  OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that ~~relate in any way to Claims asserted in the Civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City~~are identical to those OPRA requests being withdrawn as per (c) above. Nothing herein shall be construed to limit McKeon's rights as a citizen of the City of Asbury Park to file future OPRA requests.

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the

twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder.  Any notice of revocation hereunder must be made in writing and shall be deemed to have been duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action.  Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

The Releasees likewise hereby fully and forever release, remit, acquit, remise and discharge McKeon from any and all liabilities, claims, causes of action, complaints, charges, obligations, damages, injuries, attorneys fees, costs, losses and other legal responsibilities of any kind whatsoever which Releasees have or may have had against McKeon arising out of the City's employment of Releasor, including all of those claims set forth in the Notice of Disciplinary Action filed by the City against McKeon, from the beginning of time through the date of this Agreement.

2.     **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action attached as Exhibit B hereto, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter,  McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims, released by this Agreement, and McKeon's legal fees and costs, including but not limited to those associated in connection with the Civil Actionthis litigation. Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement, including in this Paragraph and in Paragraph 3 below. Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B)  $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for

same shall be issued by the NJIIF, and shall be made payable to "~~Schall & Barasch and~~ Robert M. McKeon".  Both of the foregoing payments shall be mailed to:

Patricia Barasch, Esquire, Esq.
Schall & Barasch
110 Marter Avenue, Suite 105
Moorestown, NJ 08057; and

      3.    **Continued Employment and Benefits to McKeon.**  In addition to payment of the Settlement Sum, the City shall (i) ~~allow Plaintiff to remain~~continue Plaintiff's employment as a salaried employee at his current salary, subject to all tax, social security, pension, unemployment and medical benefits withholdings, with full benefits and payroll deductions until June 30, 2020, including payment, following Plaintiff's effective retirement date, for all accrued vacation and sick time due him from his employment from July 28th, 2014 through June 30th, 2020; (ii) provide Plaintiff with full medical benefits through his 65th birthday which is ~~;~~December 22nd, 2024; (iii) ~~remove~~ dismiss all pending disciplinary actions against Plaintiff, including, the June 6th, 2018 Preliminary Notice of Disciplinary Action, the April 2018 Management Review Plan, ~~PNDA and~~ the November 13th, 2018 Revised and Amended Preliminary Notice of Disciplinary Action, and vacate the August 20th, 2019 F&R Report, and remove those items and the Florio Report [addressing McKeon's internal complaints] from Plaintiff's personnel file.  Plaintiff ~~acknowledges and agrees that he~~ shall ~~not~~ be entitled to ~~any~~the standard annual salary ~~increases from the date of this~~increase previously negotiated by his Union, and provided for in the Collective Bargaining Agreement ~~through June 30,~~ which increase takes effect and is due to all Union employees beginning on January 1st, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties to the extent such claims arise from acts or omissions of McKeon within the scope of his ~~active~~ employment with the City, such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

    ~~3~~4.   **Warranty of Capacity To Execute Agreement**.  Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified~~.~~, except that such benefits shall inure to and give rise to a claim by his estate for the value of such benefits in the event of McKeon's death prior to all benefits contemplated

hereunder having been paid by the City. Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

45. **Entire Agreement**. This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement.  The Agreement shall also inure to the benefit of each Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

56. **Representation of Comprehension of Document**.  In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

67. **No Admission of Liability**.  Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

78. **Tax Implication**. NJIIF makes no representations as to the tax consequences or liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf.  Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum.  Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

89. **Non-Disparagement**.  McKeon covenants and agrees to make no disparaging or

false allegations or comments intended to harm the reputation of the City or any employee or elected official thereof, and the, Capabianco and Moor, with the specific exception that nothing herein shall ban or prohibit McKeon's right to make public statements with regard to the subject matter of this litigation and the Internal Complaints filed by McKeon, and that the non-disparagement obligation shall apply only to the extent that it does not violate McKeon's First Amendment rights to free speech, nor violate McKeon's rights pursuant to N.J. Senate Bill 121, which amended the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, and went into effect on March 18th, 2019. The City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon. Capabianco and Moor covenant and agree to make no disparaging or false allegations or comments intended to harm the reputation of McKeon. Nothing in the foregoing shall preclude McKeon, as a citizen of the City of Asbury Park, from commenting on, or expressing opinions on, matters of public importance relating to the City of Asbury Park, notwithstanding that such matters are related in any way whatsoever to the subject matter of the within litigation.

910. **Liens**. Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff. If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full. This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens. Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum. In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

10. **Indemnification**. In the event Plaintiff shall recover any monies from any person who thereafter seeks indemnification from any of the Releasees with regard to any Claims embodied in the Notice, Plaintiff shall indemnify and hold the Releasees harmless for any money

~~spent in defending against these claims, including, but not limited to, attorneys' fees, costs of suit, judgment or settlement.~~

———11.    **Related Claims.**  Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release~~.~~, except in the event of a default in the terms of this Settlement Agreement and Mutual Release by the Defendants and/or the NJIIF.

12.    **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.    **Law**. This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

14.    **Severability**. The provisions of this Agreement are severable. If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

15.    **Counterparts**. This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

16.    **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.

By: _____
_____        ROBERT M. MCKEON
Witness

DATED:

By: _____
_____        Schall & Barasch
Witness

DATED:

The City of Asbury Park

By: _____
~~Michael Capabianco~~
City Manager, City of Asbury Park

_____
Witness

DATED: _____


Michael Capabianco


By: _____
Michael Capabianco

_____
Witness

DATED: _____

John Moor


By: _____
John Moor

_____
Witness

DATED: _____


The New Jersey Intergovernmental Insurance Fund
on behalf of its insureds, the City of Asbury Park


By: _____
ERIC J. NEMETH, ESQ.
GENERAL COUNSEL, NJIIF

_____
Witness

DATED: _____

# EXHIBIT H

**SETTLEMENT AGREEMENT AND RELEASE**

  **THIS SETTLEMENT AGREEMENT AND RELEASE** (hereinafter referred to as "Agreement") made this _____ day of March 2020, by and between, on the one hand, the New Jersey Intergovernmental Insurance Fund ("NJIIF"), with offices located at NJIIF c/o Eric J. Nemeth, General Counsel, Eric J. Nemeth, P.C., 55 Madison Avenue, Suite 400, Morristown, New Jersey 07960 on behalf of its insureds, the City of Asbury Park, a municipal corporation of the State of New Jersey, with offices located at 1Muncipal Plaza, Asbury Park, New Jersey 07712 (hereinafter referred to as "Asbury Park" or the "City") and the City itself, and on the other hand, Robert M. McKeon (hereinafter referred to as "Plaintiff" or "McKeon"). The City, NJIIF, and Plaintiff shall be collectively referred to herein as the "Parties" and individually as a "Party The date the Agreement is signed by the last signatory hereto shall be deemed the "date of this Agreement".

**WITNESSETH**

  **WHEREAS**, Plaintiff filed an action in the Superior Court of New Jersey, Docket No. MON-L-537-19, which was removed on March 14, 2019 to the United States District Court of New Jersey, civil action No. 3:19-cv-8536 alleging claims against the City, Mayor John Moor ("Moor") and Michael Capabianco ("Capabianco") regarding his employment with the City (the "Civil Action") and;

  **WHEREAS,** the City, Moor and Capabianco are provided with insurance coverage through the NJIIF for the Civil Action; and

  **WHEREAS,** the City brought disciplinary charges against McKeon and served him with a Preliminary Notice of Disciplinary Action on or about November 13, 2019 (the "PNDA"), which charges were the subject of a hearing and resulting Findings and Recommendation report dated August 20, 2019 by hearing officer Alan Genitempo, Esq. (the "F&R Report"); and

  **WHEREAS,** the City, the NJIIF, on behalf of its insureds, and Plaintiff have reached an agreement on the resolution of McKeon's claims and desire and intend to memorialize the settlement by execution of this Agreement.

  **NOW, THEREFORE**, in consideration of the mutual promises and agreements set forth herein, the Parties agree as follows:

{00824926.DOCX v.2}

1.      **Release and Discharge.** As partial consideration for payment of the Settlement Sum (as that term is defined in Paragraph 2, below) and other consideration provided to McKeon in this Agreement, Plaintiff, for himself and on behalf of his successors, heirs, beneficiaries, agents, estates and assigns (individually and collectively referred to herein as "Releasor") hereby fully and forever releases, remits, acquits, remises, hold harmless and discharges (the "Release") each of the City, Moor, Capabianco, and the NJIIF, as well as the City's and the NJIIF's past and present officials, agents, attorneys, commissioners, departments, volunteers, officers and employees (for individuals, said Release runs to them in their official and personal capacities), and all of their respective heirs, estates, successors and assigns (hereinafter, individually and collectively referred to as "Releasees"), jointly and individually, from any and all liabilities, claims, causes of action, charges, appeals, complaints, obligations, costs, losses, damages, injuries, attorneys' fees and other legal responsibilities of any form or kind whatsoever whether vested or contingent, which Releasor has or may have against Releasees from the beginning of time  through the date of this Agreement, including  without limitation, any Paclaims in law, equity, contract, tort, public policy, any claims or causes of action for breach of contract, negligence, malicious prosecution, retaliation, conspiracy, negligent hiring, negligent training, failure to intervene, unlawful custom or practice, civil rights violations, retaliation, harassment and/or discrimination, including but not limited to claims based upon, among other things, disability, handicap, sex, age or race, negligent or intentional infliction of emotional distress, defamation, any claims arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 6, et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq., ("Title VII"); the Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. §§ 1981, § 1983, et seq. ("Civil Rights Act"); the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a, et seq. ("CRA of 1991"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"); the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"); the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"); the Equal Pay Act, 29 U.S.C. § 201, et seq., (EPA"); the Rehabilitation Act, 29 U.S.C. §§ 701, et seq. ("RA"); the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000, et seq. ("PDA"); the Whistleblower Protection Statutes, 10 U.S.C. § 2409, 12 U.S.C. § 1831j, 31 U.S.C. § 5328, 41 U.S.C. § 265, (collectively as "WPS"); the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq.;

the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("LAD"), the New Jersey Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("FLA"); the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA");   New Jersey Worker Freedom from Intimidation Act, N.J.S.A. 34:19-9 et seq.; the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, et seq. ("WHL"); the New Jersey Discrimination in Wages Law, N.J.S.A. 34:11-56.1, et seq. ("DWL"); the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-39.1, et seq. ("NJWC"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, et seq. ("WPL"), the Uniformed Services Employment and Reemployment Rights Act, the United States Constitution, the New Jersey Constitution, or any other federal, state or local statute, ordinance or law, whether such claims are known or unknown, unforeseen, unanticipated, unsuspected or latent, and any claims which were raised or could have been raised prior to the date of this Agreement, (all of the foregoing being individually and collectively referred to herein as "Claims.").

In addition to the Release, Plaintiff (a) shall provide counsel for the City in the Civil Action with a fully executed  Letter of Resignation effective June 30, 2020 (the "Letter of Resignation") to be held in escrow by the City, (b) shall submit a letter to the City withdrawing all Complaints against Capabianco and City employee Melody Hargrove (the "Withdrawal Letter"); (c) covenants and agrees to, and hereby immediately withdraws all current and pending OPRA or common law requests for information requests, and (d) agrees to refrain from filing any future OPRA or common law requests for information that relate in any way to Claims asserted in the Civil Action, Claims he could have asserted through the date of this Agreement or Plaintiff's employment with the City.

McKeon understands that the Release includes, but is not limited to, a release and waiver of all rights or claims that Plaintiff might have under the Age Discrimination in Employment Act of 1967, as amended, and the Older Workers Benefit Protection Act.  McKeon acknowledges that he is aware of his legal right to consider this Agreement for a period of twenty-one (21) days.  Plaintiff understands that this Agreement may be executed prior to the expiration of the twenty-one (21) day period.  Plaintiff agrees that he has received consideration for this waiver to which he would not otherwise be entitled.  McKeon understands that he has the right to revoke this Agreement within seven (7) days of his execution thereof, and if he revokes this Agreement, he will not be entitled to the Settlement Sum or any other consideration provided for hereunder. Any notice of revocation hereunder must be made in writing and shall be deemed to have been

duly given only if hand-delivered within seven (7) days of the execution of the Agreement to defense counsel for the City in the Civil Action. Plaintiff understands that this Release does not become effective and enforceable until the seven (7) day revocation period has expired.

2.     **Lump Sum Payments**. Within thirty (30) days following (a.) delivery to counsel for the NJIIF by McKeon of (1) a fully executed copy of this Agreement, (2) Plaintiff's date of birth, current address and SSN, (3) the W9 for Plaintiff's attorneys, (4) a clear Charles Jones search and (5) an executed copy of the dismissal with prejudice of Plaintiff's Civil Action, (6) two original copies of the Letter of Resignation, and (7) the Withdrawal Letter, McKeon will be paid the lump sum amount of $155,000 (the "Settlement Sum") in satisfaction of all of McKeon's Claims released by this Agreement, and McKeon's legal fees and costs including but not limited to those associated with the Civil Action. Plaintiff acknowledges and agrees that he shall receive no other payment, compensation or consideration from NJIIF, the City or any other Releasee as a result of this Release or his execution of this Agreement, other than the Settlement Sum and as specifically set forth in this Agreement, and in Paragraph 3 below. Plaintiff further acknowledges and agrees that (A) $65,000 of the Settlement Sum represents reimbursement of Plaintiff's legal fees and costs associated with prosecution of the Civil Action and that same shall be paid via check issued by the NJIIF and made payable to "Schall & Barasch"; and (B) $90,000 of the Settlement Sum represents payment to Plaintiff for his alleged injuries and the check for same shall be issued by the NJIIF, and shall be made payable to "Robert M. McKeon". Both of the foregoing payments shall be mailed to:

> Patricia Barasch, Esquire, Esq.
> Schall & Barasch
> 110 Marter Avenue, Suite 105
> Moorestown, NJ 08057

In addition to payment of the Settlement Sum, the City shall (i) continue McKeon on the City's payroll at his current salary, subject to all tax, social security, pension, unemployment and benefits withholdings, with full medical benefits and payroll deductions until June 30, 2020, including payment, following Plaintiff's effective resignation date, for all accrued vacation and sick time due him from his employment from July 28th, 2014 through June 30th, 2020; (ii) provide Plaintiff with full medical benefits through his 65th birthday which is December 22nd,

2024; (iii) dismiss all pending disciplinary charges against McKeon's and remove the April 2018 Management Review Plan, from Plaintiff's personnel file. Plaintiff acknowledges and agrees that he shall not be entitled to any salary increases from the date of this Agreement through June 30, 2020. The City and NJIIF further agree that McKeon shall be entitled to insurance coverage for claims brought against him by third parties to the extent such claims arise from acts or omissions of McKeon within the scope of his active employment with the City, such coverage being subject to the terms, conditions and exclusions of the NJIIF's policies of insurance and applicable statutory and common law.

4.    **Warranty of Capacity To Execute Agreement**.    Plaintiff represents and warrants that no other person or entity has any interest in the claims which constitute the Civil Action, or in any other demands, obligations, or causes of action referred to in this Agreement, and that he has the sole right and exclusive authority to execute this Agreement and receive the benefits specified, Plaintiff further represents that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, or any other demands, obligations or causes of action referred to in this Agreement.

5.    **Entire Agreement**. This Agreement contains the entire agreement among the Parties concerning the matters set forth in this document and shall be binding upon each Releasor as if each had executed this Agreement. The Agreement shall also inure to the benefit of each Releasee, each of whom shall be authorized to enforce its provisions as if they were a signatory hereto.

6.    **Representation of Comprehension of Document**. In executing this Agreement, Plaintiff represents that he has relied upon the legal advice of his attorney who is the attorney of his own choice, that he has had the full opportunity to review this Agreement with his attorney, that the terms of this Agreement have been completely read and explained by his attorney, and that those terms are fully understood and voluntarily accepted.

7.    **No Admission of Liability**.    Plaintiff acknowledges and agrees that the Civil Action is being settled by the NJIIF and the City for purposes of economic expediency and that in settling this matter, no admission of liability is being made by the NJIIF, or the City and no such admission shall be construed hereby.

8.    **Tax Implication**. NJIIF makes no representations as to the tax consequences or

liability arising from any consideration, including but not limited to the Settlement Sum, provided under this Agreement. Moreover, any tax consequences and/or liability arising from the consideration provided to Plaintiff in accordance with this Agreement shall be Plaintiff's sole responsibility and obligation, and neither the NJIIF, the City nor any Releasee shall be held liable for any payment of any taxes or penalties on Plaintiff's behalf. Plaintiff agrees that he will pay any and all income tax that may be determined to be due in connection with the payment of the Settlement Sum. Should the Internal Revenue Service, any State or any other taxing agency or tribunal require Defendants to pay any taxes, fines, penalties, interest or any other cost related to taxes on behalf of Plaintiff with regard to the payment of the Settlement Sum, Plaintiff agrees to defend, indemnify and reimburse the NJIIF, their agents, servants or representatives for any taxes they are required to pay as a result of Plaintiff's failure to do so.

9. **Non-Disparagement**. McKeon covenants and agrees to make no disparaging or false allegations or comments intended to harm the reputation of the City or any employee or elected official thereof, and the ,The City and its elected officials and employees shall be advised not to make any disparaging or false allegations or comments intended to harm the reputation of McKeon.

10. **Liens**. Plaintiff hereby represents that no liens, including but not limited to, any Medicare liens, exist against the proceeds of the Settlement Sum, and that if any liens do exist, they will be paid in full, compromised or satisfied and released by Plaintiff. If a lien exists which is not satisfied as required by this Agreement, and a claim is made by anyone to enforce that lien, Plaintiff agrees that he will pay that lien in full. This representation and covenant are intended to include all liens, including, but not limited to, attorneys' liens, medical provider liens, Medicare and Medicaid liens, workers' compensation liens, ERISA liens, all statutory or common law liens, and judgment liens. Plaintiff agrees to indemnify and hold the Releasees harmless in connection with any claim made against Plaintiff by reason of liens against or tax obligations associated with the proceeds of the Settlement Sum. In the event a claim is hereafter made against any of the Releasees, including but not limited to, the NJIIF, by anyone seeking payment of any liens, Plaintiff will indemnify and hold the Releasees, including the NJIIF and City, harmless for any money spent in paying any such liens and/or defending against such a claim, including, but not limited to, attorneys' fees, costs of suit, and interest.

10. Indemnification. In the event Plaintif shall recover any monies from any person

who thereafter seeks indemnification from any of the Releasees with regard to any Claims embodied in this Settlement agreement and Release, Plaintiff shall indemnify and hold the Releasees harmless for any money spent in defending against these claims, including, but not limited to, attorneys' fees, costs of suit, judgment or settlement.

11.     **Related Claims.**  Plaintiff promises and agrees not to file, re-file, appeal, initiate, or cause to be filed, re-filed or initiated any claim, suit, claim or other proceeding based upon, arising out of, or related to any claims and causes of action subsumed within the Release,

12.     **Modification**. This Agreement may not be modified except by an agreement in writing, executed by all Parties hereto.

13.     **Law**.  This Agreement shall be governed in all respects, including validity, interpretation, and effect by the laws of the State of New Jersey without giving effect to the conflicts of laws principle thereof.

14.     **Severability**.  The provisions of this Agreement are severable.  If any provisions of the Agreement are declared invalid or unenforceable, with the exception of Paragraph 1, entitled "Release and Discharge", the ruling will not affect the validity and enforceability of any other provision of the Agreement.

15.     **Counterparts**.  This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be an original.

16.     **Representation by Counsel**. Each Party represents that he has had the opportunity to have an attorney of their own choosing review the terms of this Agreement, and having received the advice of said counsel, have agreed to sign this Agreement will full understanding of its terms.

_____          By:   _____
_____                ROBERT M. MCKEON
Witness
                                          DATED: _____


_____          By:   _____
_____                Schall & Barasch
Witness
                                          DATED: _____

                                          The City of Asbury Park

By:   _____
                    City Manager, City of Asbury Park
_____
Witness

DATED:


                    The New Jersey Intergovernmental Insurance Fund
                    on behalf of its insureds, the City of Asbury Park


By:   _____
                    ERIC J. NEMETH, ESQ.
_____          GENERAL COUNSEL, NJIIF
Witness

DATED: