# SCHALL & BARASCH L.L.C

### Attorneys at Law

Richard M. Schall*
Patricia A. Barasch

*Also licensed in Pennsylvania*
*\*Of Counsel*

Moorestown Office Center
110 Marter Avenue
Suite 105
Moorestown, NJ 08057-3124
856-914-9200
856-914-9420 Fax

November 13, 2020
**BY ECF ONLY**

Zahid N. Quraishi, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Bldg &I US Courthouse
Courtroom 7W
402 E. State Street
Trenton, NJ 08608

Re:   *McKeon v. City of Asbury Park et al; Civil Action No. 3:19-cv-08536-MAS-ZNQ*

 Dear Judge Quraishi:

As the Court is aware, I represent Plaintiff Robert McKeon in the above-referenced matter. Per the Court's November 4, 2020 Order, I write to address the one remaining issue that stands in the way of the parties' bringing an end to this case: whether two OPRA requests Plaintiff made to the City of Asbury Park in August, 2020 fall outside the terms of the settlement negotiated by the parties back on August 28, 2019 and therefore need not be withdrawn by Plaintiff.  As discussed below, because the two OPRA requests are *not* "related to the civil litigation," the prior agreement reached by the parties does not require that they be withdrawn.

**The Relevant Factual Background:**

At the conclusion of a settlement conference conducted by Your Honor on August 28, 2019, the parties agreed upon the terms of a settlement to resolve the case—terms that were memorialized on a "Term Sheet" signed off on by the parties.   A copy of that "Term Sheet" is attached to this letter as Exhibit A.  Among the terms agreed to by the parties were the following: "No additional OPRA requests on issues related to [the] civil litigation by McKeon;" and "withdrawal of pending OPRA requests related to [the] civil litigation."

The parties' efforts to generate a full and final agreement, based on the Term Sheet, were only partially successful and ultimately required the parties to file cross-motions with this Court to enforce the Settlement.  The decision on those cross-motions was issued by Judge Shipp on September 25, 2020.  A copy of Judge Shipp's Memorandum Opinion, dated September 25, 2020, is attached to this letter as Exhibit B.  Among the issues addressed by Judge Shipp in his Opinion was the dispute

The Hon. Zahid N. Quraishi, U.S.M.J.
11/13/2020
Page 2

between the parties as to the language regarding the withdrawal of OPRA requests that should be included in the parties' final agreement.   Finding that the language proposed by Defendants was inconsistent with the terms of the parties' agreement as reflected on the Term Sheet, Judge Shipp wrote the following:

### C.  The OPRA Request Dispute

Plaintiff argues that Defendants' Final Proposed Agreement's OPRA provisions are too broad. *(Id.* at 3.) The Court agrees. The Proposed Settlement Terms require Plaintiff to cease filing OPRA requests- and withdraw his pending OPRA requests- related to the instant civil litigation. (Proposed Settlement Terms *3.) The OPRA provisions contained in Defendants' Final Proposed Agreement's prevent Plaintiff from filing OPRA "[c]laims [Plaintiff] could have asserted through the date of th[e settlement a]greement or Plaintiff's employment with [Asbury Park]." (Defs.' Final Proposed Agreement 3.) This language, while including claims related to the instant litigation, prevents Plaintiff from filing OPRA requests on matters wholly unrelated to the instant matter. Such language, therefore, is not consistent with the plain language of the Proposed Settlement Terms and should not be included in the final settlement agreement.

See Exhibit B, Memorandum Opinion at p. 13.

In the weeks that followed the issuance of that Memorandum Opinion, the parties engaged in discussions to draft an agreement consistent with the Court's Opinion.  As to the issue of Plaintiff's pending OPRA requests, the parties were largely successful in reaching agreement as to which ones were "related to the civil litigation" and needed to be withdrawn, and which ones were not "related to the civil litigation and therefore need not be withdrawn.  However, the parties have not been able to reach agreement as to two of these OPRA requests.  As noted above, since it is Plaintiff's position that, since these two requests are not related to the civil litigation, the parties' agreement (and Judge Shipp's Memorandum Opinion) do not require that they be withdrawn.

The two OPRA requests that remain at issue are request #pr-359-2020, attached as Exhibit C to this letter, and request # 360-2020, attached as Exhibit D to this letter.  Plaintiff filed these two requests in August 2020 after experiencing what he perceived to be the City's engaging in a pattern of imposing unnecessary costs, fees, and expenses on him in order to interfere with his obtaining responses to his OPRA requests.  Plaintiff had reason to believe that the City was placing such obstacles in his path but was not placing similar obstacles in the path of others making OPRA requests.  In particular, Plaintiff was concerned that the City was putting these obstacles in his path in order to interfere with his then-pending campaign for a seat on the Asbury Park City Council and/or in order to retaliate against him for having filed a lawsuit against the City.

A review of the two requests at issue shows that neither of them seek information "related to the civil litigation."  The issues "related to the civil litigation" that were resolved at the settlement conference that occurred on August 28, 2019 were the issues that had been raised by Plaintiff in his Complaint: alleged violations by the City of Plaintiff's rights under the FMLA; the NJLAD; and

The Hon. Zahid N. Quraishi, U.S.M.J.
11/13/2020
Page 3

CEPA.  None of the allegations in the Complaint referred in any way to the manner in which the City was handling OPRA requests.  Moreover, in filing the two OPRA requests that remain at issue, Plaintiff is not seeking any information "related to the civil litigation;" rather he seeks information regarding the City's conduct that may have interfered with his rights to receive responses to OPRA requests—exposing him to disparate treatment when compared to the City's treatment of other citizens.

Moreover, in claiming that these two OPRA requests are somehow "related to the civil litigation," the City advances a dangerous position that, if accepted, would allow it to claim that every time the Plaintiff chooses in the future to file an OPRA request, it is somehow "related to the civil litigation"—basing such an argument on the fact that the Plaintiff had previously brought suit against the City.

For the foregoing reasons, the Court should find that the two OPRA requests at issue are not "related to the civil litigation" and therefore need not be withdrawn.

Very truly yours,

SCHALL & BARASCH, L.L.C.

*/s/ Patricia A. Barasch*

BY:  PATRICIA A. BARASCH

cc:  Stephen Boraske, Esq. (*by ECF*)
     Robert McKeon (*by email only*)

# EXHIBIT A

Page 1 of 2

McKeon v. City of Asbury Park et al
                    Civil Action No. 3:19-CV-8536


On this 28th day of August 2019, The

parties hereby agree as follows

- McKeon to release all claims against As          PAB
- McKeon to be continued on the payroll
  with full pay and benefits through 6/30/20
                              └ including Pension contributions
                                 & Deductions

- Full medical benefits for McKeon
        from 7/1/20 through McKeon's 65th birthday.


- Payment of attorneys fees for McKeon to
        Schall & Barasch in the amount of $65,000


- Payment of $90,000 to McKeon

- Mutual non-desparagement clause &    indemnification
                                        of any claim
                                        asserted against
                                        McKeon within
- Removal of all pending disciplinary actions from  scope of
  McKeon's Personnel file                            employment
- Removal of Management Review Plan
        - Letter of Resignation effective 6/30/20 to be
                    held in escrow

Page 2 of 2

— McKeon to withdraw all complaints
    against Capobianco
— McKeon withdrawal of
    ↳ all complaints against Melody Hartgrove.

-   and related additional issues

    additional
-   No OPRA requests or issues related
    to civil litigation by McKeon

-   Withdrawal of pending OPRA requests
                    related to civil litigation   -
-   Riviera π to remove furniture by 9/30/19
-   Parties for

-   Draft Settlement Agreement to be provided
    to π's counsel by Oct 3, 2019

-   Payment of Settlement money within
    30 days of execution of agreement.

Robert McKeon
Pat A. Barard
Patricia Barard
Attorney for McKeon

Michael Capobianco

Eric Abramson   Attorney for AS

NJ IT
Cancilla

# EXHIBIT B

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MCKEON,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF ASBURY PARK, et al.,<br><br>        Defendants. | Civil Action No. 19-8536 (MAS) (ZNQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two motions. The first is Defendants City of Asbury Park ("Asbury Park"), John Moor ("Moor"), and Michael Capabianco's ("Capabianco") (collectively, "Defendants") Motion to Enforce the Settlement Agreement (ECF No. 26), which Plaintiff Robert McKeon ("Plaintiff") opposed (ECF No. 30). The second motion is Plaintiff's unopposed Cross-Motion to Enforce the Settlement Agreement. (ECF No. 31.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion to Enforce the Settlement Agreement and Plaintiff's Cross-Motion to Enforce the Settlement Agreement are denied.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff was hired by Asbury Park in July 2014 as the Director of Property Improvement and Neighborhood Preservation. (Compl. ¶ 11, Ex. A to Notice of Removal, ECF No. 1-1.) Plaintiff asserts that, in this role, his responsibilities included "eliminat[ing] blight and substandard

housing" in Asbury Park, "revamp[ing] the [Department of Property Improvement and Neighborhood Preservation's] operations, and correct[ing] . . . long-standing issues of waste, inefficiency, and negligent services." (*Id.* ¶¶ 10–12.) Plaintiff was also responsible for overseeing the work of Asbury Park's "Code Enforcement Officers" and "Housing Inspectors" (collectively, the "Asbury Park Officers"). (*Id.* ¶ 14.) Plaintiff contends that some Asbury Park Officers were not properly carrying out their duties by, *inter alia*, "allowing tenants to move into unsafe properties; ignoring . . . housing code violations; . . . and otherwise failing to follow the procedures put in place to ensure safe and habitable living conditions." (*Id.* ¶ 15.) According to Plaintiff, he reported this misconduct to Capabianco—who was then Asbury Park's City Manager—but Capabianco "refused to take any action to address [the] situation[], and also refused to allow [P]laintiff to do so." (*Id.* ¶¶ 18–21.) Furthermore, Plaintiff alleges that Capabianco and Moor—Asbury Park's Mayor—"actively worked to undermine [P]laintiff's efforts and ultimately commenced a campaign of retaliation and harassment designed to force [P]laintiff out of his job." (*Id.* ¶ 22.) This campaign allegedly included: (1) giving Plaintiff an increased workload consisting of "purposeless work and responsibilities"; (2) subjecting Plaintiff to an unnecessary and time-consuming "managerial improvement plan" due to "spurious charges that he had 'disparately treated' certain female staff"; and (3) initiating a disciplinary action against Plaintiff for failing to report two motor vehicle accidents. (*Id.* ¶ 30.)

On June 18, 2018, following one of the above-mentioned motor vehicle accidents, Plaintiff requested time off from work to deal with stress and anxiety. (*Id.* ¶ 32.) Plaintiff applied for and was granted leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, and spent ten weeks receiving counseling and medical treatment. (*Id.* ¶¶ 33–34.) On August 30, 2018, Plaintiff asserts that his physician informed Asbury Park that Plaintiff was cleared to return to work. (*Id.* ¶ 34.) Capabianco, however, informed Plaintiff via letter correspondence that, before

returning to full duty, Asbury Park needed a clear statement from Plaintiff's psychologist stating Plaintiff was eligible to return to work. (*Id.* ¶ 35.) Furthermore, Capabianco's letter stated that Asbury Park "shall exercise its right to require [Plaintiff] to undergo our own fitness for duty examination before returning to work." (*Id.*) The letter also noted that, if Plaintiff satisfied both of these requirements, he was still subject to the outstanding disciplinary charges. (*Id.*) Plaintiff contends that, despite providing Defendants with a letter from his psychologist stating he was eligible to return to work, Defendants refused to allow Plaintiff to return to work without first undergoing a psychological examination by Asbury Park's doctor. (*Id.* ¶¶ 36–37.)

On August 24, 2018, during Plaintiff's FMLA leave, Plaintiff asserts he filed an internal complaint (the "Internal Complaint") against Capabianco alleging retaliation, harassment, discrimination, and hostile work environment. (*Id.* ¶¶ 39–40.) On September 25, 2018, Plaintiff filed a supplement to the Internal Complaint providing further factual support for his claims. (*Id.* ¶¶ 42–43.) Both the Internal Complaint and the supplement were submitted directly to Capabianco and Asbury Park's Affirmative Action Officer. (*Id.* ¶ 44.) On November 13, 2018, Plaintiff was informed that Defendants had filed "amended" and "revised" disciplinary charges against him seeking his termination. (*Id.* ¶ 45.)

On February 7, 2019, Plaintiff filed the instant three-count Complaint against Defendants in the Superior Court of New Jersey, Law Division, Monmouth County, alleging: Count One for unlawful retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §§ 14:19-1, *et seq.*, (*id.* ¶¶ 48–54); Count Two for unlawful retaliation in violation of the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. §§ 10:5-1, *et seq.*, (*id.* ¶¶ 55–58); and Count Three for violation of the FMLA, (*id.* ¶¶ 59–63). On March 14, 2019, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441. (*See generally* Notice of Removal, ECF No. 1.)

## B.     Settlement Discussions

On August 19, 2019, the parties jointly requested a settlement conference before the Honorable Zahid N. Quraishi, U.S.M.J. (Defs.' Aug. 19, 2019 Correspondence, ECF No. 10.) The settlement conference was held on August 28, 2019, and resulted in the parties agreeing on proposed terms and settling the matter. The settlement included the following terms: (1) Plaintiff releases Defendants from all claims; (2) Plaintiff continues to be included on the Asbury Park payroll with full pay and benefits, including pension withholdings and all deductions, until June 30, 2020; (3) Plaintiff receives full medical benefits from July 1, 2020 through Plaintiff's 65th birthday; (4) Plaintiff's counsel's law firm receives $65,000 in attorneys' fees; (5) Plaintiff receives a payment of $90,000; (6) a mutual non-disparagement clause; (7) indemnification of any claims asserted against Plaintiff within the scope of his employment; (8) the removal of all pending disciplinary charges and a "Management Review Plan" from Plaintiff's personnel file; (9) Plaintiff provides a letter of resignation effective June 30, 2020 to be held in escrow; (10) Plaintiff withdraws all complaints against Capabianco and Asbury Park employee Melody Hartgrove; (11) Plaintiff agrees not to file any additional requests under the New Jersey Open Public Records Act ("OPRA"), N.J. Stat. Ann. §§ 47:1A-1, *et seq.*, related to the instant litigation; (12) Plaintiff withdraws his pending OPRA requests related to the instant litigation; (13) Plaintiff removes his furniture by September 30, 2019; (14) Defendants provide a draft settlement agreement to Plaintiff by October 3, 2019; and (15) the payment of settlement money will occur within thirty days of execution of the settlement agreement (collectively, the "Proposed Settlement Terms"). (Proposed Settlement Terms, ECF No. 31-3.) The Proposed Settlement Terms were signed by Plaintiff, Plaintiff's counsel, Capabianco, and Eric Nemeth ("Nemeth"), General Counsel for the New Jersey Intergovernmental Insurance Fund ("NJIFF"), the insurer of Asbury Park. (*Id.* at *3;[1] *see also*

---

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

4

Defs.' Moving Br. 5, ECF No. 26-3.) That same day, this Court entered an Order administratively terminating the action for sixty days pending consummation of the settlement. (Aug. 28, 2019 Order, ECF No. 16.) On October 29, 2019, after the expiration of the sixty-day period, the Court, not having heard from the parties, entered an Order reopening the case and dismissing the action with prejudice. (Oct. 29, 2019 Order, ECF No. 17.)

During and subsequent to the sixty-day administrative termination period, the parties exchanged e-mail messages attempting to agree on a final settlement agreement.[2] On October 4, 2019, Defendants sent Plaintiff an e-mail message containing Defendant's proposed settlement agreement for execution ("Defendants' First Proposed Agreement" or "DFPA"). (DFPA *5–13, ECF No. 26-4.)[3] Plaintiff replied on October 24, 2019 and included an edited version of the DFPA ("Plaintiff's First Proposed Agreement" or "PFPA"). (PFPA *15–27.) On December 4, 2019, Defendants sent Plaintiff an e-mail message indicating the specific proposed language in the PFPA that Defendants either accepted or rejected ("Defendants' Second Proposed Agreement" or "DSPA"). (DSPA *29–40.) On December 19, 2019, Plaintiff sent Defendants an e-mail message once again containing the PFPA and further stating that he would not sign the DSPA. (Pl.s' Dec. 19, 2019 Correspondence *42–55.) On March 2, 2020, Plaintiff sent an e-mail message to

---

[2] When these communications did not result in a final settlement agreement, Plaintiff filed a Motion to Reinstate the Case to allow the parties to produce such an agreement. (Pl.'s Mot. to Reinstate, ECF No. 18.) This Court granted Plaintiff's Motion and reinstated the case. (Nov. 20, 2019 Order, ECF No. 19.)

[3] Defendants provided the DFPA, as well as the parties' subsequent settlement agreement proposals and e-mail correspondence, in one attachment. (*See generally* ECF No. 26-4.) The following proposals are in the attachment and in the following page ranges: (1) DFPA (*5–13); (2) Plaintiff's First Proposed Agreement (*15–27); (3) Defendants' Second Proposed Agreement (*29–40); (4) Plaintiff's December 19, 2019 Correspondence (*42–55); and (5) Plaintiff's Second Proposed Agreement (* 57–67).

5

Defendants with a further revised copy of the settlement agreement ("Plaintiff's Second Proposed Agreement" or "PSPA"). (PSPA *57–67.)

The parties did not agree to any of the proposed agreements and, on March 6, 2020, Defendants filed their instant motion along with an attachment of their final proposed agreement ("Defendants' Final Proposed Agreement"). (Defs.' Final Proposed Agreement, ECF No. 26-1.) On May 7, 2020, Plaintiff filed his instant cross-motion along with his final proposed agreement as an attachment ("Plaintiff's Final Proposed Agreement"). (Pl.'s Final Proposed Agreement, ECF No. 31-4.) The parties now move before the Court to enforce their respective settlement agreement as the final settlement agreement.

C.    **Parties' Positions**

1.    **Defendants' Positions**[4]

Defendants argue that several of the changes and additions Plaintiff made to Defendants' proposed settlement agreements do not reflect the August 28, 2019 Proposed Settlement Terms and, therefore, should not be included in a final settlement agreement. (Defs.' Moving Br. 6–8.) The disputed inclusions and exclusions are: (1) the naming of Capabianco and Moor as parties and signatories to the agreement (the "Capabianco and Moor Dispute"); (2) the inclusion of Plaintiff's "heirs, executors, administrators, successors[,] and assigns" ("Plaintiff's Heirs") as beneficiaries to the agreement (the "Plaintiff's Heirs Dispute"); (3) the exclusion of the provision preventing Plaintiff from filing OPRA requests related to "[c]laims [Plaintiff] could have asserted through the date of [the settlement a]greement or Plaintiff's employment with [Asbury Park]" (the "OPRA

---

[4] Several of Defendants' arguments are rendered moot by Plaintiff's Final Proposed Agreement, which was filed after Defendants' Motion. (*See, e.g.,* Defs.' Moving Br. 7–8 (rejecting Plaintiff's inclusion in the PSPA of a "Continued Employment and Benefits to [Plaintiff]" section); Pl.'s Final Proposed Agreement 4–5 (removing the "Continued Employment and Benefits to [Plaintiff] section).) For the purpose of this Opinion, the Court only addresses the disputes relevant to the parties' final proposed agreements and the instant motions.

6

Request Dispute"); (4) the inclusion of a mutual release provision discharging Plaintiff from any and all claims Defendants may have against Plaintiff relating to Plaintiff's employment with Asbury Park (the "Mutual Release Dispute"); (5) the inclusion of Plaintiff's—and not Defendants'—non-disparagement clause, which lists Capabianco and Moor as parties to the clause (the "Non-Disparagement Dispute"); and (6) the exclusion of the indemnification clause (the "Indemnification Dispute"). (*Id.*) Defendants' Final Proposed Agreement, accordingly, does not contain these disputed terms and conditions. (*See generally* Defs.' Final Proposed Agreement.)

### 2.    Plaintiff's Positions

Plaintiffs argue that the above-referenced disputes should be resolved in Plaintiff's favor and included in the final settlement agreement. First, for the OPRA Request Dispute, Plaintiff notes that, pursuant to the Proposed Settlement Terms, Plaintiff is prohibited from filing—and is required to withdraw—OPRA requests "related to the civil litigation by [Plaintiff.]" (Pl.'s Moving Br. 3, ECF No. 31-1 (quoting Proposed Settlement Terms *3).) Plaintiff argues that Defendants' Final Proposed Agreement in this area is too broad and, accordingly, Plaintiff's Final Proposed Agreement removes language prohibiting Plaintiff from filing "OPRA or common law requests for . . . [c]laims [Plaintiff] could have asserted through the date of this Agreement and Plaintiff's employment with [Asbury Park]." (Pl.'s Moving Br. 3; Pl.'s Final Proposed Agreement ¶ 1.)

Next, for the Non-Disparagement Dispute, Plaintiff rejects Defendants' Final Proposed Agreement's provisions, in which Plaintiff "covenants and agrees" to not disparage Defendants, but Defendants are merely "advised" to not do the same. (Pl.'s Moving Br. 4; Defs.' Final Proposed Agreement ¶ 9.) Plaintiff's Final Proposed Agreement, therefore, includes language requiring Defendants to "covenant and agree to make no disparaging statements or false allegations intended to harm the reputation of [Plaintiff]." (Pl.'s Final Proposed Agreement ¶ 9.) Plaintiff's Final

Proposed Agreement also includes Moor and Capabianco as parties to the non-disparagement clause. (*Id.*)

For the Capabianco and Moor Dispute, the Proposed Settlement Terms include a provision that Plaintiff release all claims against Defendants. (Proposed Settlement Terms *2.) Defendants, however, do not include Capabianco and Moor as parties in their final proposal. (*See generally* Defs' Final Proposed Agreement.) Plaintiff argues that, because Capabianco and Moor are parties in the present litigation, and because they faced liability as employers under Count One of the Complaint, the final settlement agreement must include both Capabianco and Moor as parties and signatories. (Pl.'s Moving Br. 4.) Plaintiff's Final Proposed Agreement, therefore, includes Capabianco and Moor as parties and signatories. (*See generally* Pl.'s Final Proposed Agreement.)

Regarding the Indemnification Dispute, Plaintiff argues that the indemnification clause in Defendants' Final Proposed Agreement "was never discussed nor agreed to by the parties at the . . . settlement conference." (Pl.'s Moving Br. 5.) Accordingly, Plaintiff's Final Proposed Agreement removes the clause in its entirety. (*See generally* Pl.'s Final Proposed Agreement.) As to the Mutual Release Issue, Plaintiff's Final Proposed Agreement adds a provision that any release be mutual. (*Id.* ¶ 1.) Plaintiff argues that, "[s]uch mutuality is needed in order that the parties can put all their disputes behind them without the fear of future litigation." (Pl.'s Moving Br. 6.)

Finally, for the Plaintiff's Heirs Issue, Plaintiff's Final Proposed Agreement adds language "making it clear that the [settlement a]greement will inure to the benefits of Plaintiff's heirs, executors, administrators, successors[,] and assigns should [Plaintiff] die before all of the benefits provided for in the [a]greement are paid out." (*Id.*; *see generally* Plaintiff's Final Proposed Agreement.) Plaintiff contends that this language is appropriate "given that Defendants have also included language . . . requiring [r]elease [of claims] to be made not only by [Plaintiff] for himself,

8

but also "on behalf of his successors, heirs, beneficiaries, agents, estates[,] and assigns.'" (Pl.'s Moving Br. 6 (quoting Defendants' Final Proposed Agreement ¶ 1).)

## II.    LEGAL STANDARD

"The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same—both deprive a party of his right to be heard in the litigation." *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). Courts, therefore, treat a motion to enforce a settlement under the same standard as a motion for summary judgment, *id.* at 1032, and grant the motion when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A settlement agreement between parties in a lawsuit is a contract and, therefore, governed by state contract law. *Jacob's Limousine Transp., Inc. v. City of Newark*, 688 F. App'x 150, 151 (3d Cir. 2017); *Excelsior Ins. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348–49 (D.N.J. 1996). "A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.' Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (internal citations omitted) (quoting *Borough of W. Caldwell v. Borough of Caldwell*, 138 A.2d 402, 410 (N.J. 1958)). Additionally, contracts must be accompanied by consideration. *Excelsior*, 975 F. Supp. at 349. Furthermore, "[i]n bilateral contracts or agreements, such as the one in the case at hand, where the parties make mutual promises to do some future act, 'the consideration of the promise of one party is a promise on the part of the other.'" *Id.* (quoting *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646, 651 (N.J. 1956)).

9

Despite these requirements, a settlement agreement does not need to contain every possible term to be enforceable. *Bistricer v. Bistricer*, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987). Rather, "[s]o long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.* (citation omitted). "[A]s long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact . . . [the] writing does not materialize because a party later reneges.'" *McDonnell v. Engine Distribs.*, No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (quoting *Lahue v. Pio Costa*, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993)). This is true "even [if the parties] contemplate the later execution of a formal document to memorialize their undertaking." *United States v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997).

Finally, in New Jersey, there is a strong public policy in favor of settlements. *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990). Courts, therefore, will "strain to give effect to the terms of a settlement whenever possible." *Dep't of Pub. Advocate, Div. of Rate Counsel v. N.J. Bd. of Pub. Utils.*, 503 A.2d 331, 333 (N.J. Super. Ct. App. Div. 1985); *see also Borough of Haledon v. Borough of N. Haledon*, 817 A.2d 965, 975 (N.J. Super. Ct. App. Div. 2003). Despite this strong policy favoring settlements, a court will not enforce a settlement agreement "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." *Bistricer*, 555 A.2d at 47 (citation omitted).

## III.  DISCUSSION

As a threshold matter, it is undisputed—and the Court agrees—that the Proposed Settlement Terms constitute a valid, enforceable settlement agreement. (Pl.'s Moving Br. 1; Defs.' Moving Br. 9.) At the August 28, 2019 settlement conference, the parties agreed to and memorialized the essential terms of the agreement, and manifested an agreement to be bound by

10

those terms. *Weicher Co. Realtors*, 608 A.2d at 284. The parties, however, disagree over certain terms in the final settlement agreement, and ask the Court to enforce their respective agreements. (Pl.'s Moving Br. 1–2; Defs.' Moving Br. 9–10.)

"Under New Jersey law, [courts] must interpret the parties' contract according to its plain language." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (citing *State Troopers Fraternal Ass'n of N.J. v. State*, 692 A.2d 519, 523 (N.J. 1997)). In doing so, courts should "read the document as a whole in a fair and common[-]sense manner." *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009). "[W]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction and the courts must enforce those terms as written." *Karl's Sales and Serv., Inc. v. Gimbel Bros.*, 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1991). "[I]f the agreement is silent as to a circumstance which thereafter arises, the parties may not be left without an agreement." *Aarvig v. Aarvig*, 590 A.2d 704, 707 (N.J. Super. Ct. App. Div. 1991). "So long as the parties intended to be bound by their agreement and a court is able to fill any gaps necessary to achieve a fair and just result, the contract may be modified by the addition of reasonable terms." *Id.*

Through this lens, the Court addresses the outstanding disputes precluding the parties from reaching a final settlement agreement.

### A.     The Capabianco, Moor, and Non-Disparagement Disputes

Plaintiff asserts that Defendants Capabianco and Moor faced individual liability as employers under Count One of the Complaint and should, therefore, be parties to and signatories of the final settlement agreement. (Pl.'s Moving Br. 4–5.) Furthermore, Plaintiff disagrees with the non-disparagement language of Defendants' Final Proposed Agreement, which requires Plaintiff to "covenant[] and agree[]" to not disparage Asbury Park and its employees or officials, while only requiring that Asbury Park and its employees and officials to "be advised" not to

11

disparage Plaintiff. (*Id.* at 3–4 (quoting Defs.' Final Proposed Agreement ¶ 9).) Plaintiff's Final Proposed Agreement includes this "covenant and agree" language for both parties, and includes— instead of Asbury Park and its employees and officials—Asbury Park's Administrator, Asbury Park's Council Members, Capabianco, and Moor. (Pl.'s Final Proposed Agreement ¶ 9.)

Defendants argue that only Asbury Park—which encompasses Capabianco and Moor as employees—entered into the August 28, 2019 settlement agreement. (Defs.' Moving Br. 6.) Defendants, therefore, contend that only Asbury Park's current City Manager and the NJIIF counsel are required to be parties to and sign the final settlement agreement and its included non-disparagement clause. (*Id.*)

The Proposed Settlement Terms make clear that "the *parties*[5] hereby agree" to the essential terms referenced in this Opinion. (Proposed Settlement Terms *2 (emphasis added).) The first term that the parties agree to is that Plaintiff will "release all claims against [*Defendants*.]" (*Id.* (emphasis added).) This language indicates that the parties to the settlement agreement and the Defendants in instant action are distinct. The inclusion of Moor and Capabianco in Plaintiff's Proposed Final Agreement, therefore, is inconsistent with the Proposed Settlement Terms and should not be included in the final settlement agreement. The Court, however, does find that the Proposed Settlement Terms plainly call for a "*mutual* non-disparagement clause." (Proposed Settlement Terms *2 (emphasis added).) As stated, Defendants' Final Proposed Agreement's language is not mutual. Accordingly, the non-disparagement language included in the final settlement agreement must include reciprocal language.

---

[5] The Proposed Settlement Terms are signed by Plaintiff, Plaintiff's counsel, Capabianco, and Nemeth. (Proposed Settlement Terms *3.)

### B.    The Plaintiff's Heirs Dispute

Next, Plaintiff's Final Proposed Agreement includes language "making clear that the [settlement a]greement will inure to the benefit of Plaintiff's [H]eirs . . . should he die before all of the benefits provided for in the [settlement a]greement are paid out." (Pl.'s Moving Br. 6; Pl.'s Final Proposed Agreement 1.) A plain reading of the Proposed Settlement Terms, however, does not support Plaintiff's assertion. (*See, e.g.*, Proposed Settlement Terms *2 ("Payment of $90,000 to [*Plaintiff*].]) (emphasis added).) Nowhere in the Proposed Settlement Terms is there any language or indication that Plaintiff's Heirs shall be entitled to the agreed-upon financial terms in the event of Plaintiff's death. (*See generally id.*) Furthermore, as both parties propose a lump sum payment, it is unclear that these terms are even necessary. (Pl.'s Final Proposed Agreement ¶ 2; Defs.' Final Proposed Agreement ¶ 2.) Accordingly, the Court finds that Plaintiff's Heirs are not parties to the settlement agreement, and terms prescribing their receipt of Plaintiff's financial award in the event of his death shall not be included in the final settlement agreement.

### C.    The OPRA Request Dispute

Plaintiff argues that Defendants' Final Proposed Agreement's OPRA provisions are too broad. (*Id.* at 3.) The Court agrees. The Proposed Settlement Terms require Plaintiff to cease filing OPRA requests—and withdraw his pending OPRA requests—related to the instant civil litigation. (Proposed Settlement Terms *3.) The OPRA provisions contained in Defendants' Final Proposed Agreement's prevent Plaintiff from filing OPRA "[c]laims [Plaintiff] could have asserted through the date of th[e settlement a]greement or Plaintiff's employment with [Asbury Park]." (Defs.' Final Proposed Agreement 3.) This language, while including claims related to the instant litigation, prevents Plaintiff from filing OPRA requests on matters wholly unrelated to the instant matter. Such language, therefore, is not consistent with the plain language of the Proposed Settlement Terms and should not be included in the final settlement agreement.

13

### D.    The Mutual Release Dispute

Plaintiff's Final Proposed Agreement includes a provision that Defendants release Plaintiff from any and all liabilities and claims Defendants have or may have had against Plaintiff arising out of Plaintiff's employment with Asbury Park. (Pl.'s Final Proposed Agreement 4.) Plaintiff notes that, although the Proposed Settlement Terms are silent on this issue, "it is standard—and understood by the parties whenever a final settlement agreement and release is entered into—that any release will be mutual." (Pl.'s Moving Br. 6.) According to Plaintiff, "[s]uch mutuality is needed in order that the parties can put all their disputes behind them without the fear of future litigation." (*Id.*) Defendants do not agree to the provision, nothing that Defendants have no counterclaims against Plaintiff and have already agreed to remove Plaintiff's disciplinary charges from his file. (Defs.' Moving Br. 7.)

As Plaintiff concedes, (Pl.'s Moving Br. 5), the Proposed Settlement Terms contain no language requiring Defendants to release any claims they have or may have against Plaintiff arising out of Plaintiff's employment, (*see generally* Proposed Settlement Terms). The only release required of Defendants is that of Plaintiff's disciplinary charges and the "Management Review Plan." (*Id.* at *2.) This requirement is included in Defendants' Final Proposed Agreement. (Defs.' Final Proposed Agreement 5.) Accordingly, Plaintiff's mutual release provision is not consistent with the plain language of the Proposed Settlement Terms and should not be included in the final settlement agreement.

### E.    The Indemnification Dispute

Finally, Defendants' Final Proposed Agreement includes a provision stating that, "[i]n the event Plaintiff shall recover any monies from any person who thereafter seeks indemnification from any of the [Defendants,]" Plaintiff shall "indemnify and hold [Defendants'] harmless for any money spent in defending against" such a claim. (Defs.' Final Proposed Agreement 6–7.)

Defendants contend that this is simply a standard indemnification clause. (Defs.' Moving Br. 8.) Plaintiff, however, argues that this provision "was never discussed nor agreed to by the parties at the August 28th settlement conference." (Pl.'s Moving Br. 5.)

The Proposed Settlement Terms contain indemnification language, and awards protection in Plaintiff's favor. (Proposed Settlement Terms *2 ("indemnification of any claim asserted against [Plaintiff] within scope of employment").) Had the parties wished to include the additional indemnification provision Defendant asserts, the Court believes they would have done so in the Proposed Settlement Terms. Defendants' indemnification provision, therefore, is not consistent with the plain language of the Proposed Settlement Terms and should not be included in the final settlement agreement.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds deficiencies in both Plaintiff and Defendants' Final Proposed Agreements. The Court, therefore, denies Plaintiff and Defendants' Motions to Enforce the Settlement. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

**Request #pr-359-2020**

a) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2019 and the current date, which included the following language in the responses: "legal review is necessary in order to determine whether such records are subject to production and, if so, to perform redactions as needed. It is anticipated that this legal review shall also encompass approximately ...... hours of time. The hourly rate for the City attorney is $160.00 per hour....." b) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2019 and the current date, which included the following language in the responses: "In order to locate all of the above-referenced records, the City's IT Director spent approximately .......hours. The IT Director's hourly rate is $48.54 per hour. Therefore, the total cost associated with the time spent by the City's IT Director, relating to your request, equates to ......." c) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2019 and the current date, which included any request for payment of a fee for services of the City's attorney either rendered, or proposed to be rendered, in connection with the Clerk providing responses to such OPRA requests; d) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2019 and the current date, which included any request for payment of a fee for services of the City's IT Director, either rendered, or proposed to be rendered, in connection with the Clerk providing responses to such OPRA requests; e) Provide copies of the actual OPRA requests received by the City Clerk, to which any of your responses in (a) through (d) above, apply.

# EXHIBIT D

**Request #pr-360-2020**

a) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2020 and the current date, which included the following language in the responses: "Your request requires additional time beyond the seven (7) business days to fulfill due to the voluminous amount of records and the ongoing COVID-19 pandemic"; b) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2019 and the current date, which included the following language in the responses: "Your request requires additional time beyond the seven (7) business days to fulfill due to the voluminous amount of records"; c) Provide copies of the actual OPRA requests received by the City Clerk, to which any of your responses in (a) and (b) above, apply; d) For the period between November 30, 2019 and the current date, provide copies of all emails between Melody Hartsgrove and Donna Viero, which include the following keywords or any form of such keywords: "McKeon" and "OPRA" or "request"; e) For the period between November 30, 2019 and the current date, provide copies of all emails between Melody Hartsgrove, Joseph Dellaragione and/or Donna Viero, which include the following keywords or any form of such keywords: "McKeon" and "OPRA" or "request"; f) For the period between November 30, 2019 and the current date, provide copies of all emails between Melody Hartsgrove, Tamica Smith and/or Donna Viero, which include the following keywords or any form of such keywords: "McKeon" and "OPRA" or "request"; g) For the period between November 30, 2019 and the current date, provide copies of all emails between Melody Hartsgrove, George Selah and/or Donna Viero, which include the following keywords or any form of such keywords: "McKeon" and "OPRA" or "request" ; h) For the period between November 30, 2019 and the current date, provide copies of all emails between Melody Hartsgrove, Donna Viero and/or any City DPW staff member, which include the following keywords or any form of such keywords: "McKeon" and "OPRA" or "request" i) Provide copies of all responses from the Asbury Park City Clerk, to OPRA requests submitted during the time-period between January 1, 2019 and the current date, which made any reference to the requestor's inspection of the documents requested, in the City's Municipal offices; j) For the period between November 30, 2019 and the current date, provide copies of all emails between Melody Hartsgrove and/or any current member of the City Council or Mayor John Moor, which include the following keywords or any form of such keywords: "McKeon" and "OPRA" or "request"; k) For the period between November 30, 2019 and the current date, provide copies of all emails between Donna Viero and/or any current member of the City Council or Mayor John Moor, which include the following keywords or any form of such keywords "McKeon" and "OPRA" or "request".